United States Court of Appeals
Fifth Circuit

**F I L E D**

May 20, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 03-10529

_____

DAVID A. KIMBELL,SR., INDEPENDENT EXECUTOR
UNDER THE WILL OF RUTH A. KIMBELL, DECEASED,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, BARKSDALE and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this estate tax case, David A. Kimbell, the executor of the estate of his mother Ruth A. Kimbell, appeals the judgment of the district court denying his request for a refund of estate taxes and interest paid by the estate. The district court decided on cross-motions for partial summary judgment that the value of assets the decedent transferred to the R.A. Kimbell Property Co., Ltd (Partnership) was includible in her gross estate under I.R.C. § 2036 because the transfer was not a bona fide sale for full and adequate consideration. We conclude that the district court erred in finding as a matter of law that (1) family members can not enter into a bona fide transaction, and (2) a transfer of assets in return for a pro rata partnership interest is not a transfer for full and adequate consideration. The district court also erred in failing to consider uncontroverted record evidence to support the taxpayer's position that the transfer was a bona fide sale. We therefore

vacate and remand.

I.

Ruth A. Kimbell ("Mrs. Kimbell" or the "Decedent") died testate on March 25, 1998. She was 96 years old. The Plaintiff, David A. Kimbell, is the Decedent's son and the executor of her estate. In the years prior to her death, the Decedent transferred a large portion of her estate in a series of transactions to three entities. In 1991, Mrs. Kimbell created the R.A. Kimbell Living Trust (the "Trust"), which was a revocable living trust administered by Mrs. Kimbell and her son as co-trustees. In January 1998, the Trust, David Kimbell and his wife formed a limited liability company, the R.A. Kimbell Management Co., L.L.C. (the "LLC"). The Trust contributed $20,000 for a 50% interest. David Kimbell and his wife each contributed $10,000 for 25% interests each. David Kimbell was the sole manager of the LLC.

Later in January 1998, the Trust and the LLC formed the R.A. Kimbell Property Co., Ltd., a limited partnership under Texas law (the "Partnership"). The Trust contributed approximately $2.5 million in cash, oil and gas working interests and royalty interests, securities, notes and other assets for a 99% pro-rata limited partner interest. The oil and gas properties were a continuation of an oil and gas business that the Decedent's late husband had founded in the 1920's. The LLC contributed approximately $25,000 in cash for a 1% pro-rata general partner interest. At inception, approximately 15% of the assets of the Partnership were oil and gas working (11%) and royalty (4%) interests. As a result of these transfers, Mrs. Kimbell, through the Trust and the LLC, owned 99.5% of the Partnership. David Kimbell managed Mrs. Kimbell's business interest before and after the creation of the LLC and the Partnership. Not all of Mrs. Kimbell's assets were conveyed to the LLC and the Partnership. She retained over $450,000 in assets outside of

2

the LLC and the Partnership for her personal expenses. The primary focus of this appeal is on this transfer from the LLC and the Trust to the Partnership. Because of Mrs. Kimbell's control of the Trust assets, the transfer by the Trust is viewed as a transfer by Mrs. Kimbell.

Under the stated terms of the Partnership Agreement, the purposes of the Partnership were to "increase Family wealth; establish a method by which annual gifts can be made without fractionalizing Family Assets; continue the ownership and collective operation of Family Assets and restrict the right of non-Family members to acquire interests in Family Assets; provide protection to Family Assets from claims of future creditors against Family members; prevent transfer of a Family member's interest in the Partnership as a result of a failed marriage; provide flexibility and continuity in business planning for the Family not available through trusts, corporations or other business entities; facilitate the administration and reduce the cost associated with the disability or probate of the estate of Family members; promote the Family's knowledge of and communication about Family Assets; provide resolution of any disputes which may arise among the Family in order to preserve Family harmony and avoid the expense and problems of litigation; and consolidate fractional interests in Family Assets." (Paragraph numbers omitted.) These purposes were supported by the deposition testimony of David Kimbell and Micheal Elyea, Mrs. Kimbell's business advisor. The term of the Partnership was 40 years.

The LLC, as general partner, managed the Partnership and had exclusive authority to make distributions. The Partnership Agreement provided that the general partner owed no fiduciary duty to the Partnership or to any Partner but owed a duty of loyalty and a duty of care to the Partnership. The Trust, as limited partner, had no right to withdraw from the Partnership or receive a return of contributions until the Partnership was terminated, which could occur only by

3

unanimous consent of the partners. The Partnership Agreement provided that 70% in interest of the limited partners had the right to remove the general partner. A majority in interest of the limited partners had the right to elect a new general partner.

The estate filed its federal estate tax return in December 1998. At the time of Mrs. Kimbell's death, the value of the Partnership assets was approximately $2.4 million. On the return, the estate claimed a 49% discount on the value of Mrs. Kimbell's interest in the Partnership and her interest in the LLC for lack of control and lack of marketability of the partnership interest. It reported her 99% interest in the Partnership as having a fair market value of approximately $1.2 million and her 50% interest in the LLC as having a fair market value of approximately $17,000.

The IRS audited the estate. It found that the value of the assets transferred to the Partnership and the LLC, rather than Mrs. Kimbell's interest in these entities, was includible in the gross estate under § 2036(a) of the Internal Revenue Code and increased the tax due accordingly. The estate paid the additional tax and then filed for a refund, claiming that the IRS overvalued Mrs. Kimbell's interests in the Partnership and the LLC.

On cross-motions for summary judgment, the district court found that the government had demonstrated, as a matter of law, that Mrs. Kimbell's transfers of assets to the Partnership and the LLC were subject to I.R.C. § 2036(a), which recaptures certain assets transferred prior to death in the gross estate. Therefore, the district court found that the IRS correctly included the value of the assets Mrs. Kimbell transferred to the Partnership and the LLC in the estate and granted partial summary judgment to the government. The estate appeals.

II.

4

This court reviews a grant of summary judgment *de novo*. Browning v. Odessa, 990 F.2d 842, 844 (5th Cir. 1993).

III.

Whether the assets Mrs. Kimbell transferred to the Partnership must be recaptured into her estate for estate tax purposes depends on the application of Internal Revenue Code section 2036(a). Internal Revenue Code section 2036(a) provides:

> (a) General rule. The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death--
> (1) the possession or enjoyment of, or the right to the income from, the property, or
> (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

26 U.S.C. § 2036(a).

The statute recognizes that some assets transferred prior to death must be recaptured into the estate. By recapturing these transfers into the estate, this section of the code prevents the circumvention of federal estate tax by the use of inter vivos transactions which do not remove the lifetime enjoyment of property purportedly transferred by a decedent. Estate of Wyly v. Commissioner, 610 F.2d 1282, 1290 (5th Cir. 1980). Regarding this provision, this court has stated:

> [Section 2036 is] part of a Congressional scheme to tax the value of property transferred at death, whether the defendant accomplishes the transfer by will, by intestacy, or by allowing his substantial control over the property to remain unexercised until death so that the shifting of its economic benefits to the beneficiary only then becomes complete.

5

Estate of Lumpkin v. Commissioner, 474 F.2d 1092, 1097 (5th Cir. 1973).

The statute provides two exceptions that will allow a transfer to escape the operation of § 2036(a). First, if the transfer is a bona fide sale for full and adequate consideration, then § 2036(a) does not apply. See Treas. Reg. §§ 20.2036-1(a), 20.2043-1(1)(as amended in 1960). If the transfer is not a bona fide sale for full and adequate consideration, then the transfer may still be excluded from the estate of the decedent under the second exception, if the decedent did not retain either the (1) possession, enjoyment or rights to the transferred property, or (2) the right to designate the persons who would possess or enjoy the transferred property. Estate of Stone v. Comm'r, 86 T.C.M. (CCH) 551, 578 (T.C. 2003); 26 U.S.C. § 2036(a).

IV.

**Bona Fide Sale for Adequate and Full Consideration**.

The first exception allows a transfer to escape the reach of § 2036(a) if it is a bona fide sale for adequate and full consideration for money or money's worth. 26 U.S.C. § 2036(a). The district court found that Mrs. Kimbell's transfer of assets to the Partnership did not qualify for this exception. Relying on Estate of Harper v. Comm'r, 83 T.C.M. (CCH) 1641 (T.C. 2002), the district court stated that the "applicability of the [bona fide sale] exception rests on two requirements: (1) [a] bona fide sale, meaning an arm's length transaction, and (2) adequate and full consideration." The court defined an arm's length transaction as one involving "two parties who are not related or not on close terms," citing BLACK'S LAW DICTIONARY 103 (7th ed. 1999). Because Mrs. Kimbell, or at least family members, were present on both sides of the transfer to the Partnership, the district court found that the transfer was not at arm's length and therefore not a "bona fide sale."

6

The district court also found that, even if one could assume that the transfer of assets to the Partnership was the result of a bona fide sale, the pro rata interest in the Partnership that Mrs. Kimbell received was not adequate consideration for the assets she transferred to the Partnership. The district court viewed the transaction as a paper transaction resulting in a mere "recycling of value." In coming to this determination, the district court again relied on Harper and distinguished this court's decision in Wheeler v. United States, 116 F.3d 749 (5th Cir. 1997).

The only case addressing the exception for a bona fide sale for full and adequate consideration in this circuit, and indeed the only appellate level case cited to us on this point, is Wheeler v. United States, 116 F.3d 749 (5th Cir. 1997). In Wheeler, the decedent sold a remainder interest in his ranch to his adopted sons. The sale was in return for a price based on the ranch's actuarial value from the tables established in Treasury Regulations for valuing future interests in property where the measuring life was that of a person of the seller's age. Id. at 752. Applying the bona fide sale exception of § 2036(a), the executor of the decedent's estate did not include the ranch in the gross estate. Id. at 752-53. The Internal Revenue Service disagreed and assessed a deficiency which the estate paid and then challenged. Id. at 753. The government's position in Wheeler was that the sale of the remainder interest in the ranch to the decedent's sons was part of a testamentary plan designed to reduce estate taxes. Id. It argued that, although the price paid for the remainder interest was equal to the then fair market value of the ranch multiplied by the present value factor from the Treasury Regulations for a person of the decedent's age, this price was not adequate and full consideration because it was less than the value of the full fee interest. Id.

Addressing the question of what constitutes "adequate and full consideration," the

7

Wheeler court noted the reason the term presents such persistent conceptual difficulty is the lack of a statutory definition for the term combined with the competing interests of tax litigants. Id. at 755. After synthesizing prior estate and gift tax cases, the court concluded that adequate and full consideration under § 2036(a) "requires only that the sale not deplete the gross estate." Id. at 759.

> The following rule emerges: unless a transfer that depletes the transferor's estate is joined with a transfer that augments the estate by a commensurate (monetary) amount, there is no "adequate and full consideration" for the purposes of either the estate or gift tax. We thus come full circle to the "equilibrium rule" set forth in United States v. Allen and cited in Gradow.

Id. at 762. In other words, the asset the estate receives must be roughly equivalent to the asset it gave up.

Wheeler also makes it clear that whether a transaction was made for adequate and full consideration is an objective inquiry. Addressing the government's argument that transactions between family members should be necessarily treated differently for estate tax purposes, this court stated:

> [t]he present transfer tax scheme eschews subjective intent determinations in favor of the objective requirements of the statute. Therefore, section 2036(a) permits the *conclusion* that a split-interest transfer was testamentary when, and if, the objective requirement that the transfer be for an adequate and full consideration is not met. Section 2036(a) does not, however, permit a perceived testamentary intent, *ipse dixit*, to determine what amount constitutes an adequate and full consideration.

Id. at 766. The court pointed out that before its amendment in 1976, the estate tax contained a provision recapturing into the gross estate transfers "intended to take effect in possession or enjoyment" at or after the decedent's death and those made "in contemplation of death." Id. at 765. After experience showed that this rule resulted in inordinate litigation by taxpayers

8

attempting to establish life motives for transfers, the rule was eventually changed to its present form to eliminate the requirement for difficult fact findings designed to determine subjective motive. Id. Thus, in this circuit, since Wheeler, a taxpayer's testamentary or tax saving motive for a transfer alone does not trigger § 2036(a) recapture if objective facts demonstrate that the transfer was made for a full and adequate consideration.

Wheeler also defines the requirements of a bona fide sale. After concluding that the actuarial value paid for the remainder interest was adequate and full consideration, the court stated that, once the appropriate value is paid for the property transferred, "the only possible grounds for challenging the legitimacy of the transaction are whether the transferor actually parted with the . . . interest and the transferee actually parted with the requisite adequate and full consideration." Id. at 764.

In Wheeler, the government argued that the requirement that a sale be "bona fide" takes on heightened significance in intrafamily transfers and this court agreed. Id. at 763. Based on this heightened scrutiny, we concluded that a court should inquire beyond the form of a transaction between family members to determine whether the substance justified the claimed tax treatment. Id. However, we made it clear that just because a transaction takes place between family members does not impose an additional requirement not set forth in the statute to establish that it is bona fide. Id. at 764. A transaction that is a bona fide sale between strangers must also be bona fide between members of the same family. In addition, the absence of negotiations between family members over price or terms is not a compelling factor in the determination as to whether a sale is bona fide, particularly when the exchange value is set by objective factors. Id. at 769. In summary, the Wheeler case directs us to examine whether "the sale . . . was, in fact a bona fide

9

sale or was instead a disguised gift or a sham transaction." Id. at 767.

This definition is consistent with the language of the statute and regulations. According to Treasury Regulations, a transaction is a bona fide sale if it is made in good faith. Treas. Reg. § § 20.2036-1(a), 20.2043-1(a). Black's Law Dictionary defines a "bona fide sale" as "A completed transaction in which seller makes sale in good faith, for a valuable consideration without notice of any reason against the sale." BLACK'S LAW DICTIONARY 161 (5th ed. 1979). "Bona fide" is defined as "in or with good faith; honestly, openly, and sincerely; without deceit or fraud" and "Real, actual, genuine, and not feigned." Id. at 160.

When examining a transaction to determine if it is "real, actual, genuine and not feigned," we are again constrained to objective factors. As stated previously, Congress eliminated the decedent's subjective intent from direct consideration under § 2036(a). A transaction motivated solely by tax planning with no business or corporate purpose is nothing more than a contrivance without substance that is rightly ignored for purposes of the tax computation. See Gregory v. Helvering, 293 U.S. 465, 469 (1935). However, tax planning motives do not prevent a sale from being "bona fide" if the transaction is otherwise real, actual or genuine. Wheeler, 116 F.3d at 769-70.

In Church v. United States, 85 A.F.T.R. 2d (RIA) 804 (W.D. Tex. 2000), aff'd without published opinion, 268 F.3d 1063 (5th Cir. 2001)(per curiam)(table), unpublished opinion available at 88 A.F.T.R. 2d 2001-5352 (5th Cir. 2001), a mother and her children formed a Texas limited partnership to consolidate their undivided interests in a family ranch. Id. at 805. The mother and the children were limited partners and a limited liability company was the general partner. Id. All parties contributed their undivided interests in the ranch to the partnership. Id.

10

The mother also contributed approximately $1 million in securities to finance ranch operations and the purchase of interests in the ranch owned by non-partners. Id. at 805-07. Each partner received a pro-rata interest in the partnership. Id. at 805-06. Under these circumstances, the court found that the character of the assets transferred to the partnership changed dramatically:

> Prior to its formation . . . [the several family members] owned undivided interests in the Ranch, with each interest carrying the right to use and enjoy the property, or force partition or possible sale. The Partnership eliminated these individual rights and placed ownership of a majority of the Ranch in a Partnership that was not controlled by any single person.

Id. at 2000-807. The court also found that the partnership was created for a genuine business purpose. "[P]reserving the family ranching business for themselves and their descendants" was a valid motivating reason to form the partnership. Id. at 2000-807. Preservation of their interests in the ranch was effectively accomplished by placing the property in the Partnership which allowed division of ownership to be recognized by ownership of partnership interests rather than by direct ownership of undivided interests in the ranch. This structure also permanently consolidated operating decisions and management of the property. The court held that the property transferred to the partnership was a bona fide sale to exclude it from application of § 2036.

Another case in which the transfer qualified as a bona fide sale is Estate of Stone v. Comm'r, 86 T.C. M. (CCH) at 578. In Stone, the assets transferred to the several family limited partnerships were going concern businesses operated for a profit. The partnerships were formed for two main reasons: as a means to currently transfer management of the parents' estates to the children, who as general managers of the partnerships, began to actively manage the partnerships; and to settle disputes among the children related to the operation of the businesses. The

11

decedents retained enough assets to maintain their standard of living. Id. at 580. The court concluded that these transfers were bona fide sales for adequate and full consideration.

Other cases relied on by the government, have as a common element the conclusion that "[w]hen a family partnership is only a vehicle for changing the form in which the decedent held his property – a mere 'recycling of value' -- the decedent's receipt of a partnership interest in exchange for his testamentary assets" does not qualify as a bona fide sale for adequate and full consideration because the transfer was only a paper transaction and without substance. Estate of Thompson v. Comm'r, 84 T.C.M. 374, 388 (2002). See also Estate of Harper, 83 T.C.M. (CCH) 1641 (T.C. 2002); Estate of Strangi v. Comm'r, 85 T.C.M. (CCH) 1331 (T.C. 2003). However, even these cases recognize that family partnerships can qualify for this exception if the transaction includes elements that indicate that the exchange was more than a sham or a disguised gift. See Harper, 83 T.C.M. at 1654 (This "transaction involves only the genre of value 'recycling' . . . and does not appear to be motivated primarily by legitimate business concerns."); Thompson, 84 T.C.M at 388-89 ("[N]one of the individual partners . . . was involved in the conduct of an active business. . . . None of the parties involved in the partnerships joined together with the intent to either form business enterprises or otherwise to conduct any trade or business. . . . [The activities of the partnership were] not for business purposes."); Strangi, 85 T.C.M. at 1344 (The partnership "patently fails to qualify as the sort of functioning business enterprise that could potentially inject intangibles that would lift the situation beyond mere recycling.").

In summary, what is required for the transfer by Mrs. Kimbell to the Partnership to qualify as a bona fide sale is that it be a sale in which the decedent/transferor actually parted with her interest in the assets transferred and the partnership/transferee actually parted with the partnership

12

interest issued in exchange. In order for the sale to be for adequate and full consideration, the exchange of assets for partnership interests must be roughly equivalent so the transfer does not deplete the estate. In addition, when the transaction is between family members, it is subject to heightened scrutiny to insure that the sale is not a sham transaction or disguised gift. The scrutiny is limited to the examination of objective facts that would confirm or deny the taxpayer's assertion that the transaction is bona fide or genuine. We now turn to the application of these principles to today's case.

A.

The district court found that the exchange of a limited partnership interest for the assets Mrs. Kimbell transferred to the Partnership was not a bona fide sale for adequate and full consideration. It did not separately analyze the two requirements. Rather it concluded that Mrs. Kimbell's contribution of more than 99% of the assets into the Partnership to be managed (as they were before the transfer) by her son was nothing more than a recycling of value and the interest in the Partnership Mrs. Kimbell received not a transfer of consideration. The government adopted that position and argues in addition that it is inconsistent for the estate to assert, on one hand, that the value of Mrs. Kimbell's interest in the Partnership is worth only 50% of the assets she transferred (as discounted for lack of control and marketability), and on the other hand claim that the Partnership interest Mrs. Kimbell received in exchange for the assets transferred was adequate and full consideration for the transfer.

The Tax Court has expressly rejected the argument that a discounted valuation of a pro rata partnership interest precludes a finding that the interest is adequate consideration for the assets transferred. In Estate of Stone v. Comm'r, 86 T.C.M. (CCH) 551, 578, the Tax Court held

13

that this argument:

> in effect reads out of section 2036(a) the exception for a "bona fide sale for an adequate and full consideration in money or money's worth" in any case where there is a bona fide, arm's length transfer of property to a business entity (e.g. a partnership or a corporation) for which the transferor receives an interest in such entity (e.g. a partnership interest or stock) that is proportionate to the fair market value of the property transferred to such entity and the determination of the value of such interest takes into account appropriate discounts.

Id.

We would only add to the Tax Court's rejection of the government's inconsistency argument that it is a classic mixing of apples and oranges: The government is attempting to equate the venerable "willing buyer-willing seller" test of fair market value (which applies when calculating gift or estate tax) with the proper test for adequate and full consideration under § 2036(a). This conflation misses the mark: The business decision to exchange cash or other assets for a transfer-restricted, non-managerial interest in a limited partnership involves financial considerations other than the purchaser's ability to turn right around and sell the newly acquired limited partnership interest for 100 cents on the dollar. Investors who acquire such interests do so with the expectation of realizing benefits such as management expertise, security and preservation of assets, capital appreciation and avoidance of personal liability. Thus there is nothing inconsistent in acknowledging, on the one hand, that the investor's dollars have acquired a limited partnership interest at arm's length for adequate and full consideration and, on the other hand, that the asset thus acquired has a present fair market value, i.e., immediate sale potential, of substantially less than the dollars just paid —— a classic informed trade-off.

As this principle applies to wholly unrelated buyers and sellers of interests in limited partnerships, it must be equally true of buyers and sellers of such interests who happen to be

14

related by blood or affinity, <u>unless</u> (1) the evidence demonstrates the absence of good faith, i.e., a sham transaction motivated solely by tax avoidance, or (2) Congress or the courts are ready to change long-held positions and establish a <u>per</u> <u>se</u> rule that related parties can never enter into arms-length transactions for adequate and full consideration —— positions that none has shown any inclination to assume. Certainly, close scrutiny must be applied when the parties are related, but close scrutiny is not synonymous with automatic proscription or impossibility <u>vel</u> <u>non</u>.

The proper focus therefore on whether a transfer to a partnership is for adequate and full consideration is: (1) whether the interests credited to each of the partners was proportionate to the fair market value of the assets each partner contributed to the partnership, (2) whether the assets contributed by each partner to the partnership were properly credited to the respective capital accounts of the partners, and (3) whether on termination or dissolution of the partnership the partners were entitled to distributions from the partnership in amounts equal to their respective capital accounts. <u>Id.</u> at 580. The answer to each of these questions in this case is yes. Mrs. Kimbell received a partnership interest that was proportionate to the assets she contributed to the Partnership. There is no question raised as to whether her partnership account was properly credited with the assets she contributed. Also, on termination and liquidation of the Partnership, the Partnership Agreement requires distribution to the Partners according to their capital account balances.

Accordingly, we conclude that this transaction was for adequate and full consideration. The district court's concern that Mrs. Kimbell's transfer of assets to the partnership in exchange for a pro-rata partnership interest is a mere paper transaction resulting in "recycling of value" is better addressed under the "bona fide sale" prong of this exception.

15

B.

As stated previously, the district court found that the transfer by Mrs. Kimbell of assets to the Partnership in exchange for pro-rata partnership interest was not a bona fide sale. Ignoring circuit precedent established in Wheeler, the district court's conclusion was based on its erroneous assumption that an arm's length transaction, defined as one between persons who are not related, was a requirement of this exception. The district court also concluded that the transaction resulted only in a change in form, a recycling of value, which would also preclude a conclusion that this transaction was a bona fide sale. However, its analysis ignored record evidence in support of the estate's position that the transaction was entered into for substantial business and other non-tax reasons.

Our review of the record reveals that the taxpayer established the following objective facts (uncontroverted by the government) that would support their position that the transfer to the Partnership was a bona fide sale:

(1)     Mrs. Kimbell retained sufficient assets outside the Partnership for her own support and there was no commingling of Partnership and her personal assets. See Estate of Strangi, 85 T.C.M. at 1338-39; Estate of Harper, 83 T.C.M. at 1650.

(2)     Partnership formalities were satisfied and the assets contributed to the Partnership were actually assigned to the Partnership. Id.

(3)     The assets contributed to the Partnership included working interests in oil and gas properties which do require active management. A working interest in an oil and gas lease is a cost-bearing operating interest in the property. Lowe, Oil and Gas Law in a Nutshell 40 (2003). The owners of the working interest have the

16

exclusive right to exploit the minerals on the land. Williams & Meyers, <u>Manual of Oil and Gas Terms</u> 1207, 11th edition (2000). Nonoperating working interest owners are called upon to pay their share of operating expenses and to make elections whether to participate in drilling operations or various phases thereof. Lowe at 387-92. A royalty interest, in contrast, is a passive right to receive a share of production, if and when there is production, free of costs. <u>Manual of Oil & Gas Terms</u> at 964. At formation, $438,000 of approximately $2.5 million in assets were oil and gas properties. Approximately 71% of the oil and gas interests were working interests. <u>Strangi</u>, 85 T.C.M. at 1344; <u>Thompson</u>, 84 T.C.M at 388.

(4)     David Kimbell and Michael Elyea advanced several credible and unchallenged non-tax business reasons for the formation of the Partnership that could not be accomplished via Mrs. Kimbell's Trust. <u>Harper</u>, 83 T.C.M. at 1654; <u>Thompson</u>, 84 T.C.M. at 389.

Michael Elyea, Mrs. Kimbell's business advisor, testified as follows regarding the business strategy for forming the Partnership. He stated that he and Mrs. Kimbell first discussed placing the assets in a limited partnership around the same time the living trust was formed in the early 1990's. Although some business strategies were accomplished by the trust, others were not. Specifically, a living trust did not provide legal protection from creditors as a limited partnership would. That protection was viewed as essential by Mr. Elyea and Mrs. Kimbell because she was investing as a working interest owner in oil and gas properties and could be personally liable for any environmental issues that arose in the operation of those properties. Mr. Elyea also stated that Mrs. Kimbell wanted the oil and gas operations to continue beyond her lifetime and they felt

17

that by putting the assets in a limited partnership, they could keep the pool of capital together in one entity that would be enhanced over time rather than subdivided by distributions to subsequent generations. Keeping the assets in one pool, under one management would reduce administrative costs by keeping all accounting functions together. The partnership would also avoid costs of recording transfers of oil and gas properties as the property was passed from generation to generation. Mrs. Kimbell wanted to keep the asset in an entity that would preserve the property as separate property of her descendants. The family had faced that issue during the divorce of one of Mrs. Kimbell's grandsons. The partnership also served the purpose of setting up the management of the assets if something should happen to her son, which was a concern as he had experienced some heart problems and had undergone a serious surgery. The partnership agreement provided that all disputes be resolved through mediation or arbitration to avoid interfamily litigation if disputes should arise. This statement of reasons is supported by the recitation of purposes in the formation documents of the Partnership (which the government and the district court selectively excerpt) and the deposition testimony of Mrs. Kimbell's son. More to the point, the stated reasons for the formation of the Partnership are confirmed by objective facts, many of which relate to the rights and responsibilities associated with investments in oil and gas investments.

The government contends that one fact pointing toward a conclusion that Mrs. Kimbell's transfer to the Partnership was not a bona fide sale is the de minimis contribution to the partnership made by the other partners. Mrs. Kimbell's son and his wife contributed approximately $20,000 of the $2.4 million in assets in the Partnership. This argument amounts to a restatement of the government's recycling of value argument and does not justify treating the

18

transaction as a sham. In addition, we know of no principle of partnership law that would require the minority partner to own a minimum percentage interest in the partnership for the entity to be legitimate and its transfers bona fide. The government also points out that the management of the Partnership assets did not change as a result of the transaction. Prior to the formation of the Partnership, David Kimbell managed Mrs. Kimbell's assets in the Trust. He continued to manage the assets once they were transferred to the Partnership. However, the important fact is that David Kimbell contributed his management expertise to the Partnership after its formation. Given the business reasons established above for the change in business form, the fact that David Kimbell performed the same services for the assets in the Trust is irrelevant.

This case was decided on cross-motions for summary judgment. The burden of proof on this issue is on the taxpayer. Estate of Maxwell v. Commissioner, 3 F.3d 591, 594 (2d Cir. 1993). The government raised no issues of material fact in its motion for summary judgment and challenged none of the taxpayer's facts. The taxpayer argued that genuine issues of material fact precluded a grant of summary judgment in favor of the government. We conclude that the district court erred in granting the government's motion for summary judgment and denying the taxpayer's motion for summary judgment on the issue of whether Mrs. Kimbell's transfer to the Partnership was a bona fide sale for full and adequate consideration so as to remove the transaction from the application of § 2036. First, as stated previously, the pro rata Partnership interest Mrs. Kimbell received was adequate and full consideration for the assets she transferred to the Partnership. Second, there is no contention that the transfer did not actually take place. The assets were formally assigned to the Partnership and Mrs. Kimbell was actually credited with a pro rata partnership interest. There is no evidence that partnership formalities were ignored or

19

that Mrs. Kimbell used Partnership assets for personal expenses. Finally, applying the heightened scrutiny applicable to transactions between family members, we are satisfied that the taxpayer has established through objective evidence recited above that the transaction was not a disguised gift or sham transaction. The government raised no material issues of fact to counter the taxpayer's evidence that the Partnership was entered into for substantial business reasons. These reasons were strongly supported by the nature of the business assets (divided working interests in oil and gas properties) conveyed, and the deposition testimony of Michael Elyea and David Kimbell.

Accordingly, we vacate the district court's judgment granting the government's motion for summary judgment and denying the taxpayer's motion for summary judgment because we conclude on this summary judgment record that the transfer to the Partnership qualifies as a bona fide sale for adequate and full consideration so as to remove the assets transferred to the Partnership from the estate of Mrs. Kimbell.

V.

**Retained Interest**

As stated previously there are two exceptions from the application of § 2036. The second exception allows a transfer to escape the reach of § 2036(a) if the transferor did not retain an interest in the asset transferred. Under § 2036(a)(1) and (2), transfers are recaptured into the estate of a decedent who retained the possession, enjoyment or right to income from the transferred property or retained the right to designate who could possess, enjoy or receive income therefrom. 28 U.S.C. § 2036(a)(1)-(2). A transferor retains the right of enjoyment of property if, at the time of transfer, there was an express or implied agreement that the interest or right would later be conferred. Estate of Reichardt v. Commissioner, 114 T.C. 144, 151-52 (T.C. 2000). A

20

retained interest can be present in the form of control over the entity that is the recipient of the assets transferred. Estate of Strangi v. Comm'r, 85 T.C.M. (CCH) 1331 (T.C. 2003).

Because we conclude that the Partnership assets qualify for exclusion from Mrs. Kimbell's estate under the exception for bona fide sales, we need not address the second exception as to that transfer. However, the second exception must be examined in reference to Mrs. Kimbell's transfer to the LLC. In an order amending its memorandum opinion and order, the district court summarily concluded that § 2036(a) was applicable to Mrs. Kimbell's 50% interest in the LLC, including her indirect 0.5% interest in the Partnership assets resulting from the LLC's ownership of the 1% general partner interest in the Partnership.

The district court's application of § 2036(a) to the LLC transfer was erroneous. Even if the transfer did not constitute a bona fide sale for full and adequate consideration, Mrs. Kimbell did not retain sufficient control of the assets transferred to the LLC to make her transfer subject to § 2036(a). Mrs. Kimbell's interest in the LLC was only a 50% interest, and her son had sole management powers over the LLC. Thus, Mrs. Kimbell did not retain the right to enjoy or designate who would enjoy the LLC property. Accordingly, we vacate the ruling of the district court on this issue.

## VI.

In the district court, the parties briefed the issue whether Mrs. Kimbell's interest in the Partnership was an assignee interest or a limited partner interest for purposes of placing a value on the decedent's partnership interest for estate tax purposes. The district court did not reach this issue because of its ruling that § 2036(a) applied to Mrs. Kimbell's transfer to the Partnership. The Estate now asks this Court to make a determination on this issue, even though it was never

21

addressed in the court below.  We decline to do so, leaving that issue to be first decided by the district court.

VII.

In summary, we conclude that the district court erred in granting summary judgment to the government and denying summary judgment to the taxpayer on the issue of whether the Decedent's transfer to the Partnership was a bona fide sale for full and adequate consideration as a matter of law.   We therefore vacate that judgement.  We also vacate the district court' grant of partial summary judgment on the issue of whether the Decedent retained an interest in property transferred to the LLC and remand for determination of whether Mrs. Kimbell's interest in the Partnership was an assignee interest or limited partnership interest and for any other proceedings consistent with this opinion.

VACATED; REMANDED.