# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1201

_____

| | |
|---|---|
| Estate of Edna Korby, deceased; | * |
| Austin Korby, Jr., Trustee of the | * |
| Austin and Edna Korby Living Trust; | * |
| Estate of Edna Korby, deceased, | * |
| Transferor; Austin Korby, Jr., Trustee | * |
| of the Austin and Edna Korby Living | * |
| Trust, Transferee, | * |
| | * |
| Appellants, | * |
| | * |
| v. | * |
| | * |
| Commissioner of Internal Revenue, | * |
| | * |
| Appellee. | * |

_____

No. 06-1203

_____

Appeals from the
United States Tax Court.

| | |
|---|---|
| Estate of Austin Korby, deceased; | * |
| Austin Korby, Jr., Trustee of the | * |
| Austin and Edna Korby Living Trust; | * |
| Estate of Austin Korby, deceased, | * |
| Transferor; Austin Korby, Jr., Trustee | * |
| of the Austin and Edna Korby Living | * |
| Trust, Transferee, | * |
| | * |
| Appellants, | * |
| | * |
| v. | * |

Commissioner of Internal Revenue,      *
                                           *

             Appellee.           *

_____

Submitted:  September 29, 2006
Filed:   December 8, 2006
_____

Before ARNOLD, BYE, and MELLOY, Circuit Judges.
_____

BYE, Circuit Judge.

The estates of Edna and Austin Korby, along with the trustee of the Edna and Austin Korby Living Trust (collectively the Korbys), appeal the tax court's[1] decisions finding estate tax due from both estates under 26 U.S.C. § 2036 on the grounds the Korbys retained the right to income from property they transferred to a family limited partnership prior to their deaths, and the transfer was not a bona fide sale for consideration. We affirm.

I

Austin and Edna Korby married in 1948. During the course of their marriage, Austin operated a bridge-building construction company. The couple accumulated a modest estate which they desired to pass on to their four sons, Austin, Jr., Gary, Donald, and Steven. In 1993, when Edna was sixty-eight and Austin seventy-nine years old, they attended a free estate planning seminar and later met with the attorney who conducted the seminar. The attorney helped the Korbys form a revocable living trust and a family limited partnership as part of their estate planning. In June 1993,

_____

[1]The Honorable Joseph Robert Goeke, United States Tax Court.

-2-

the Korbys placed in the living trust their family home, household furnishings, a vacant lot, a money market account, bank accounts, and their monthly Social Security income. In March 1994, the Korbys created the Korby Properties Limited Partnership (KPLP). A year later, the Korbys transferred to KPLP stocks valued at $1,330,442, state and municipal bonds valued at $449,378, and savings bonds valued at $71,043, for a total transfer of $1,850,863. In return, the Korbys obtained a 98% limited partnership interest from KPLP. In addition, the Korbys' living trust transferred to KPLP a savings account worth $37,841, to bring the full funding of KPLP to $1,888,704. In return, the living trust obtained a 2% general partnership interest from KPLP.

In 1995, the Korbys gifted their 98% limited partnership interest in KPLP to four irrevocable trusts created for their sons, with each son's trust receiving a 24.5% KPLP limited partnership interest. The Korbys filed gift tax returns in 1995 claiming a discount of 43.61% on the book value of each gift because the limited partnership interests were minority interests, their transfer was restricted, and they lacked management control. Thus, while each gift had a book value of $462,732.48, the gift tax returns reported each gift as being worth $260,935.

Between 1995 and 1998 – the year both Korbys died – KPLP made several distributions to the living trust as general partner, as well as a limited number of distributions to the four sons' trusts as limited partners. KPLP made payments to the Korbys' living trust totaling $120,795 ($30,387 in 1995, $19,334 in 1996, $32,324 in 1997, and $38,750 in 1998). The Korbys used these payments to help defray Edna's nursing home costs of over $30,000 per year[2] and pay the couple's taxes, medical bills, and other expenses. The payments to the limited partners during the same period

---

[2]Edna Korby began living in a nursing home in Pelican Lake, Minnesota, in February 1993 when she was diagnosed with severe Alzheimer's dementia. She lived there until she died on July 3, 1998.

totaled $34,562 ($18,101 in 1996, $4,400 in 1997, and $12,061 in 1998), and were intended to pay for the limited partners' income taxes.[3]

Edna Korby died on July 3, 1998; Austin Korby died on December 2, 1998. Both estates filed tax returns on September 7, 1999. Edna's estate return listed a total gross estate value of $73,398, listing as jointly owned property the couple's home, the vacant lot, and a checking account. The return also listed half of the general partnership interest in KPLP, or 1%. Austin's estate return reported the couple's home, the vacant lot, the checking account, some personal property, and the full general partnership interest in KPLP, or 2%, as owned by Austin at the time of his death. Neither return included the value of the assets transferred to KPLP in 1995.

The Internal Revenue Service (IRS) issued notices of deficiency as to both their estates on August 29, 2002, determining the full value of the KPLP assets includable in the gross estates on the ground the Korbys retained for their lives "the possession or enjoyment of, or the right to the income from, the property." 26 U.S.C. § 2036. The notices of deficiency totaled $2,175,117 ($1,104,635 for Edna's estate, and $1,070,482 for Austin's estate). The estates filed timely petitions for redetermination of the deficiencies in the tax court.

As relevant to this appeal, the tax court decided three issues against the Korbys. First, the tax court found the Korbys retained a right to the assets transferred to KPLP, rejecting the claim that payments from KPLP to the living trust were "management fees" for work performed as the partnership's general partner. The tax court found "an implied agreement existed between Austin, on his own behalf and on behalf of Edna,

---

[3]In June 1998, KPLP redeemed the savings bonds the Korbys had contributed to it and received from the United States Treasury two checks for $43,638 each. One of those two checks was deposited directly into the living trust, which in turn issued a $10,000 check to each of the Korby sons. The living trust retained the remaining $3,638, bringing the total amount KPLP distributed to the living trust to $124,433.

and the four Korby sons that after the assets were transferred to KPLP, income from the assets would continue to be available to Austin and Edna for as long as they needed income." The tax court noted the lack of a written management contract between the living trust and KPLP, as well as the fact KPLP made payments to the living trust whenever Austin Korby requested them rather than by a set schedule. In addition, Austin did not keep track of the hours he worked managing the partnership's assets, nor did the payments to the living trust reflect a certain percentage of KPLP's income or assets, which is commonly how management fees are calculated. The tax court also noted Austin did not report the income the living trust received for his services as self-employment income on his tax returns (although the 1998 income tax return filed on behalf of Austin after his death did so).

Second, the tax court determined the transfer to KPLP did not satisfy the § 2036(a) exception for bona fide sales for adequate consideration. The Korbys claimed KPLP was created to protect the family from commercial and personal liability or from liability arising from divorce. The tax court examined the facts and circumstances surrounding the formation of KPLP, such as Austin's involvement with the help of an estate lawyer and without the assistance of the limited partners, and found Austin "essentially stood on all sides of the partnership's formation." The tax court further determined the Korbys had not shown the terms of the KPLP agreement kept its assets beyond the reach of a limited partner's creditors. The tax court concluded credit protection was not a significant reason for forming KPLP, and the real reason for forming KPLP was tax avoidance.

Finally, the tax court rejected the estates' contention the Commissioner of Internal Revenue admitted the Korbys lacked control over the KPLP assets. Edna's estate sought a marital deduction under 26 U.S.C. § 2056, arguing Edna's rights to and power over the KPLP assets passed to her husband at the time of her death under the terms of the living trust. In opposing that contention, the Commissioner argued the assets used to fund KPLP never passed through the living trust:

The 98 percent [KPLP] limited interest was transferred to the decedent's sons on January 1, 1995. Thus, it appears that the 98 percent [KPLP] limited interest would not have passed from decedent to the surviving spouse as required by section 2056 because petitioner has not established that the limited partnership interest was part of the Trust corpus at decedent's death. Moreover, under the terms of the Korby trust, *the surviving spouse has no right to the income or the corpus of 98 percent of the property that decedent transferred to the [KPLP]*, nor does the surviving spouse have a power of appointment over that property. (Emphasis added).

The Korbys contended the statement in emphasis constituted a judicial admission the Korbys lacked control over the assets transferred to KPLP, i.e., "[t]he Government cannot prevail on the marital deduction issue due to the Decedents' lack of control and prevail on the 2036 issue due to their simultaneous right to exercise control."

The tax court concluded the Commissioner – simply by referring to the terms of the living trust in the context of arguing the KPLP assets never passed through the trust – did not admit the Korbys lacked control over the KPLP assets under § 2036. Ultimately, in resolving the marital deduction claim, Edna's estate conceded the deduction did not apply if only 38.26% of the KPLP assets were included in Edna's gross estate. Based upon that concession, the tax court included just 38.26% of KPLP's assets when calculating the deficiency against Edna's estate.

The tax court assessed deficiencies against both estates totaling $503,285 ($124,135 for Edna's estate and $379,150 for Austin's estate). The Korbys filed timely appeals of the tax court's decisions pursuant to 26 U.S.C. § 7482.

## II

We review tax court decisions in the same manner as we review civil bench trials held by district courts, that is, conclusions of law are reviewed de novo and findings of fact are upheld unless clearly erroneous. Black Hills Corp. v. Comm'r, 73 F.3d 799, 804 (8th Cir. 1996). In this case, the question whether the Korbys retained a right to income from KPLP assets for purposes of § 2036 turns on the tax court's determination that "an implied agreement existed between Austin, on his own behalf and on behalf of Edna, and the four Korby sons that after the assets were transferred to KPLP, income from the assets would continue to be available to Austin and Edna for as long as they needed income." That finding is one of fact reviewed for clear error. See, e.g., Strangi v. Comm'r, 417 F.3d 468, 476-77 (5th Cir. 2005). Similarly, the question whether there was a bona fide sale for an adequate and full consideration is one of fact reviewed for clear error. Id. at 479-80. Finally, determining whether a particular statement constitutes a judicial admission is a question of law we review de novo. See Rowe Int'l, Inc. v. J-B Enters., Inc., 647 F.2d 830, 836 (8th Cir. 1981) (analyzing a statement to determine "whether it had sufficient formality or conclusiveness to be considered a judicial admission.").

Section 2036 of the Internal Revenue Code provides in relevant part:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer . . . by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death . . . . the possession or enjoyment of, or the right to the income from, the property.

26 U.S.C. § 2036.

We find no clear error in the tax court's determination that an implied agreement existed between the Korbys and their four sons which allowed Austin and Edna to retain the right to income from KPLP after its initial funding. As outlined above, KPLP made significant payments to the Korbys' living trust over the remainder of their lifetimes. The lack of a written management contract between the living trust and KPLP, Austin's failure to keep track of the hours he spent managing KPLP, the manner in which the payments were made, and Austin's failure to report the payments as self-employment income, all support the tax court's rejection of the Korbys' management-fee claim. In addition, the evidence considered by the tax court included the fact the Korbys retained less than $10,000 in assets in the living trust (their only source of income) following the funding of KPLP – despite the fact both of the Korbys were in poor health and could expect to incur living expenses beyond amounts their Social Security benefits would cover.

Several circuits have reviewed decisions from the tax court with similar facts and concluded the tax court did not clearly err in finding a retained right of control. See Strangi, 417 F.3d at 477-78 (upholding tax court's finding of an implied agreement to retain possession and control where decedent transferred 98% of his wealth to a family limited partnership (FLP) two months before his death, leaving himself just $762 in liquid assets, and thereafter lived rent free in transferred house and received nearly $34,000 from FLP to cover living expenses and over $100,000 to cover funeral payments, estate administration expenses, specific bequests and various personal debts); Abraham v. Comm'r, 408 F.3d 26, 39-40 (1st Cir. 2005) (upholding tax court's finding of an implied agreement to retain control in similar FLP situation where decedent's children and attorney managing the FLPs testified it was their understanding the income from their FLPs would be available to pay their mother's expenses first regardless of the children's ownership interests); Thompson v. Comm'r, 382 F.3d 367, 376 (3d Cir. 2004) (upholding tax court's finding of an implied agreement to retain control where decedent transferred 95% of his assets to FLPs and did not retain sufficient assets to support himself for the remainder of his life, and

-8-

FLPs made significant cash distributions to the decedent in the three years prior to his death). We agree with those decisions, and affirm the tax court's finding that the Korbys retained for their lives the right to the income from the assets transferred to KPLP.

We also find no clear error in the tax court's finding that the KPLP transfer did not satisfy the § 2036(a) exception for bona fide sales for adequate consideration. Section 2036 of the Internal Revenue Code contains an exception for excluding from the gross estate transfers a decedent makes prior to his or her death if the transfer is "a bona fide sale for an adequate and full consideration in money or money's worth." 26 U.S.C. § 2036(a). A transfer is typically not considered a bona fide sale when the taxpayer stands on both sides of the transaction. See Estate of Bongard, 124 T.C. 95, 118 (2005). The transaction must "be made in good faith" which requires an examination as to whether there was "some potential for benefit other than the potential estate tax advantages that might result from holding assets in the partnership form." Thompson, 382 F.3d at 383. "[I]f there is no discernable purpose or benefit for the transfer other than estate tax savings, the sale is not 'bona fide' within the meaning of § 2036." Id.; see also Strangi, 417 F.3d at 479 ("[A] sale is 'bona fide' if, as an objective matter, it serves a 'substantial business [or] other non-tax' purpose." (quoting Kimbell v. United States, 371 F.3d 257, 267 (5th Cir. 2004))).

Austin formed KPLP with the help of his estate lawyer and without the involvement of his sons, who testified they were unfamiliar with the terms of the KPLP agreement. Austin alone decided which assets would be included in funding the partnership. As a consequence, the tax court found Austin "essentially stood on all sides of the partnership's formation and approved the provisions of the KPLP agreement without negotiation or input from the limited partners." The tax court also rejected the Korbys' claim KPLP was created to protect the family from commercial and personal injury liability arising from their bridge-building business, as well as liability from divorce, stating "the estate has not shown that the terms of the KPLP

-9-

agreement would prevent a creditor of a partner from obtaining that partner's KPLP interest in an involuntary transfer." The tax court found "Austin and Edna formed KPLP in order to make a testamentary transfer of their assets to their sons at a discounted value while still having access to the income from those assets for their lifetime." Based on the facts present in this case, we find no basis for concluding that the tax court's factual determinations are clearly erroneous.

Finally, the Korbys contend the Commissioner, based upon statements made in countering the claim for a marital deduction, judicially admitted the Korbys did not retain an interest in the assets transferred to KPLP. We disagree. The Korbys do not dispute the KPLP assets would have to transfer from Edna to Austin via the terms of the living trust for Edna's estate to qualify for the marital deduction. The Commissioner's statements made exactly that point, i.e., that the claim for a marital deduction was based on the terms of the living trust. We do not read the Commissioner's statements, outlining the terms of the living trust in that context, as a judicial admission the Korbys retained no control over KPLP for purposes of § 2036. Throughout these proceedings, the Commissioner has always maintained that both Edna and Austin retained an interest in the assets transferred to KPLP; such a claim is not inconsistent with contending the interest did not pass from Edna to Austin at the time of her death via the terms of the living trust.

## III

For the reasons discussed, we affirm the tax court's decisions.

_____

-10-