**MAINLAND DRILLING LIMITED PARTNERSHIP, and Dallas Drilling, Inc., Plaintiffs,**

v.

**COLONY INSURANCE COMPANY, Defendant.**

No. P–07–CV–16.

United States District Court, W.D. Texas, Pecos Division.

March 31, 2008.

Talmage Boston, Thomas Butler Alleman, Winstead Sechrest & Minick, Dallas, TX, for Plaintiffs.

John C. Tollefson, Stephen Andrew Melendi, Tollefson Bradley Ball & Mitchell, LLP, Dallas, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERT JUNELL, District Judge.

Before the Court are Plaintiffs' Motion for Partial Summary Judgment (Doc. 6); Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment and Cross–Motion for Summary Judgment (Doc. 7); Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 8); Defendant's Reply to Plaintiff's Response (Doc. 9); Plaintiff's Memorandum in Support (Doc. 12); Defendants' Motion to Strike Memorandum in Support (Doc. 15); Plaintiff's Unopposed Motion to Supplement Summary Judgment Appendix (Doc. 16); Plaintiff's Memorandum in Opposition to Motion to Strike (Doc. 17); Defendant's Brief regarding the above matters (Doc. 23); and Plaintiff's Brief regarding the above matters (Doc. 25). After consideration of the Motions and relevant law, the Court is of the opinion that Defendant's Motion for Summary Judgment should be granted.

## BACKGROUND

Mainland Drilling and Dallas Drilling ("Plaintiffs") allege that Colony Insurance ("Defendant") breached its obligation to defend an insurance policy issued to Mainland in a breach of contract case (the "Chaparral case") pending in the 143rd District Court of Loving County, Texas. Defendant claims that it had no obligation to defend under the policy. The Court agrees with Defendant.

Plaintiffs entered into a contract to drill Schawe # 15 well for Chaparral Energy in Loving County, Texas, in early 2006. The rig was moved to the well site on January 31, 2006. Defendant's insurance policy became effective on February 1, 2006. Schawe # 15 well commenced drilling on February 28, 2006.

After the well was spudded, the rig experienced several mechanical problems, leaving it inoperable for long periods of time. The well should have been drilled to a depth of 5,000 feet in approximately twelve days after drilling commenced. Instead, by April 27, 2006, Plaintiffs had still not reached a depth of 5,000 feet.

On April 29, 2006, the rig's draw works failed. Plaintiffs ceased drilling operations until June 3, 2006, while attempting to repair the rig. While drilling operations were ceased, Plaintiffs left a large portion of the drill string and attached tools down in the well bore. On June 10, 2006, in a meeting between Plaintiffs and Chaparral, Plaintiffs terminated their work under the contract. After that point, Plaintiffs ceased to circulate drilling mud in the well bore or maintain the condition of the well bore, causing the equipment to become irreparably lodged in the ground.

Chaparral brought suit against Plaintiffs in state court for negligence, breach of contract and warranty, negligent misrepresentation, promissory estoppel, and deceptive trade practices. Plaintiffs requested that Defendant provide them a defense in accordance with its policy of insurance. The insurance policy contains a clause obligating Defendant to defend for occur-

rences arising under the insurance policy. The policy also includes a Oil and Gas Working Interests provision excluding property damage claimed by or caused by a co-owner of the working interest in the oil well. Asserting that the Oil and Gas Working Interests exclusion bars coverage, Defendant denies that these claims constituted a covered occurrence under their policy and refuses to defend Plaintiffs in the Chaparral case. Both Plaintiffs and Defendants now move for summary judgment under Fed.R.Civ.P. 56.

## STANDARD OF REVIEW

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir.1996). Further, the moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir.1995). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993).

The burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

If the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of her pleading, but must set forth specific facts showing the existence of a genuine issue for trial. FED.R.CIV.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 n. 4 (5th Cir.1993); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim*, 989 F.2d at 1442 n. 4. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Factual disputes that are unnecessary or irrelevant will not be counted. *Id.* In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *Id.* at 254, 106 S.Ct. 2505.

All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. If the record, so illuminated, could not lead a rational trier of fact to find for the nonmovant, summary judgment is proper. *Kelley v. Price–Macem-*

*on, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993) (citing *Matsushita,* 475 U.S. at 577–78, 106 S.Ct. 1348). On the other hand, if the factfinder could reasonably find in the non-movant's favor, summary judgment should be denied. *Id.* (citing *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505). Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that it would be prudent to proceed to trial. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

### A. *Duty to Defend and Principles of Construction*

 The duty of an insurance company to defend its insured is broader than the duty to indemnify. *Liberty Mutual Ins. Co. v. Graham,* 473 F.3d 596, 601 (5th Cir.2006). Texas courts follow the Eight Corners doctrine, meaning that a "liability insurer's duty to defend is to be determined solely from the terms of the insurance policy and the pleadings of the underlying plaintiff" without considering the veracity of the plaintiff's allegations. *Id.* at 599–600. The presumption is in favor of finding a duty to defend. *Id.* at 600. Generally, if the petition alleges facts stating a cause of action that the policy could potentially cover, the insurer has a duty to defend; if the alleged facts fall outside the scope of coverage, then there is no duty to defend. *Id.*

 When looking at the scope of coverage, the Court must construe the insurance contract in question. Construction of an insurance contract is a question of law. *See Tex. Farmers Ins. Co. v. Murphy,* 996 S.W.2d 873 (Tex.1999). In Texas, insurance policies are contracts and are controlled by rules of contract construction. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). In interpreting a policy, the court's primary focus is to ascertain the true intent of the parties as expressed in the written document. *See National Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Industries, Inc.,* 907 S.W.2d 517, 520 (Tex.1995). If the policy is worded so that it can be given only one reasonable construction, it will be enforced as written. *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex.1993). The Court must review the entire petition and its attachments and the policy together in order to determine whether or not a duty to defend is triggered. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305 (Tex.2006).

### B. *"Oil and Gas Working Interest"*

 The Fifth Circuit has defined an "oil and gas working interest" as "a cost-bearing operating interest in the property." *Kimbell v. United States,* 371 F.3d 257, 267 (5th Cir.2004) (citing Lowe, Oil and Gas Law in a Nutshell 40 (2003); Williams & Meyers, Manual of Oil and Gas Terms 1207, 11th ed. (2000)). The policy between Plaintiffs and Defendant contains an Oil and Gas Working Interest exclusion that states:

> This insurance does not apply to:
>
> Oil and Gas Working Interests
>
> (1) "Property damage":
>
> > (a) claimed by you or any "co-owner of the working interest";
> >
> > (b) incurred by or at the request of you, additional insureds, or any "co-owner of the working interest";

(Pl. Mot. Partial Summ J. App. B).

The insurance policy, in its own terms, does not apply to property damage that is claimed by or incurred by a co-owner of the working interest. The policy defines this term as follows:

> (3) "Co-owner of the working interest" means any person or organization who:

(a) Participates in the operating expense of such properties; or

(b) Has the right to participate in the control, development, or operations of such properties.

(Pl. Mot. Partial Summ J. App. B). Using the language of the policy and the definitions provided therein, then, a "co-owner of the working interest" either (1) helps pay the operating expenses of the oil venture on the insured property, or (2) has the right to control, develop, or operate the oil venture on the insured property. If an entity does either of those two things, then the policy will not provide coverage due to the Oil and Gas Interest exclusion. If the policy would not cover the action at issue in the state court proceeding, then the insurance company has no duty to defend.

### A. Did Chaparral Participate in the Operating Expenses of the Well?

Plaintiffs argue that there is no suggestion in the pleadings that Chaparral has any obligation to participate in the operating expenses of the well at issue. (Pl. Mot. Partial Summ. J. 7). The Court disagrees.

The contract between Mainland Drilling and Chaparral Energy was attached as Exhibit A to Chaparral Energy's Original Petition as well as all amended petitions. (Pl. Unopposed Mot. to Supp. Summ. J. App. Ex. A). In this contract, the "Operator," identified as Chaparral Energy, agrees to furnish, at its own expense, certain equipment and services noted in the contract's Exhibit A. (Pl. Unopposed Mot. to Supp. Summ. J. App. Ex. A). Among the thirty-eight enumerated expenses are that Chaparral must: provide adequate roadways; surface and grade the drilling location; provide a test tank, mud storage tanks, and a separator, all with pipe and fittings; provide drilling mud, chemicals, lost circulation materials, and other additives; provide pipe and connections for oil circulating lines; and provide drilling bits, reamers, and other special tools for drilling. Three other expenses were also specifically contracted for and added to the boilerplate language of the contract. (Pl. Unopposed Mot. to Supp. Summ. J. App. Ex. A). Because Chaparral contractually obligated itself to pay for equipment and services at its own expense to further the oil well drilling venture, the Court finds that Chaparral did participate in the operating expense of the well.

### B. Did Chaparral Have the Right to Participate in the Control, Development, or Operation of the Well?

Secondly, Plaintiffs argue that Chaparral had no right to control or operate the well. (Pl. Mot. Partial Summ. J. 7). The Court again disagrees.

The contract between Mainland Drilling and Chaparral Energy contains terms relating to the casing program, the mud program, and the location of the drilling rig. (PL Unopposed Mot. to Supp. Summ. J. App. Ex. A). In each of these contractual provisions, Chaparral, as the Operator of the well, had a right to participate, along with Plaintiffs, in how the well was dug, where it would be located, and other such decisions. Additionally, the contract specifies that Mainland's duties were to be executed "under the direction, supervision, and control of Operator [Chaparral]." (Def. Mot. Summ. J. 6). Thus, the Court finds that Chaparral did have a right to participate in the control, development, or operation of the well. The factual situation in the underlying state court case might show that Chaparral did not exercise this right; that determination is for the state court to consider.

### CONCLUSION

In conclusion, the Court grants summary judgment to the Defendant. The complained-of actions underlying the Cha-

parral case are not covered under Mainland's insurance policy due to the Oil and Gas Interest exclusion. Because the policy does not cover the action at issue in the state court proceeding, then Colony Insurance Company has no duty to defend. Therefore, based on the above-stated reasons, the Court shall grant Defendant's Motion for Summary Judgment. Accordingly,

It is hereby **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 7) is **GRANTED.**