T.C. Summary Opinion 2011-54

UNITED STATES TAX COURT

BRIDGETT JEANETTE BELL, Petitioner  v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8048-08S.                    Filed April 18, 2011.

Bridgett Jeanette Bell, pro se.

John T. Arthur and Jennifer Records (student), for
respondent.

CARLUZZO, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463.[1]  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,

_____

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.  Rule references are to the Tax Court Rules of
Practice and Procedure.

and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated January 31, 2008, respondent determined a $9,527 deficiency in, and a $2,333.75 section 6651(a)(1) addition to tax with respect to, petitioner's 2004 Federal income tax.

After concessions,[2] the issue for decision is whether petitioner is entitled to a charitable contribution deduction for noncash contributions.

### Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Georgia.

In 2001 petitioner organized and caused to be incorporated Holistic Opportunities for Mental Empowerment (HOME) which later qualified as an organization described in section 501(c)(3). At all times relevant HOME was listed in Internal Revenue Service Publication 78, Cumulative List of Organizations described in Section 170(c) of the Internal Revenue Code of 1986. At least as far back as May 2003 HOME maintained a checking account with

---

[2]Respondent concedes that petitioner is entitled to a deduction for the cash contributions claimed on her 2004 Federal income tax return. Petitioner concedes that she is liable for a sec. 6651(a)(1) addition to tax.

Compass Bank (HOME's checking account).  For reasons not entirely clear to the Court, from time to time petitioner directly paid HOME-related expenses rather than making a donation to HOME so the expense could be paid from HOME's checking account.

During 2004 HOME was managed by a five-member board of directors including petitioner, who served as the president of the board; Jennie Bell (petitioner's mother); and another individual with the surname Bell.  Although a member of HOME's board, petitioner had no voting rights.

For 3 months during 2004 HOME conducted literacy classes at Good Shepherd Missionary Baptist Church (Good Shepherd) in Houston, Texas (the literacy program).  At all times relevant, petitioner was a member of Good Shepherd.  The literacy program was supervised by petitioner's mother, who used her cell phone in connection with the program.  Members of Good Shepherd volunteered to teach the classes offered through the literacy program.

Good Shepherd owned a house on property across the street from its church.  During 2004 Good Shepherd decided to use the property as a parking lot, but first the house had to be razed or moved.  Petitioner agreed to move the house (the relocated house) at her expense to property that she had acquired in 1999 in

Cleveland, Texas (the Cleveland property).[3]  Cleveland, Texas, is about 50 miles from Houston, Texas.

On an application for a building permit dated June 1, 2004, submitted to the City of Cleveland in connection with a foundation to be constructed on the Cleveland property to support the relocated house, petitioner indicated that her mother was the owner of the property and that petitioner had "been authorized by the owner or owners to act as agent in procuring the permit herein requested."  In a one-page letter dated September 2004 addressed to petitioner's mother, Thompson Foundation Repair from Houston, Texas, estimated that repairs to the relocated house would cost approximately $22,500 (the repair estimate); petitioner's signature indicating acceptance of the terms of the repair estimate is shown on the bottom of the document.

At the start of 2004 petitioner, who holds a bachelor's degree in business from the University of Houston, was employed as an adult education teacher with North Harris Community College in Houston, Texas.  During 2004 petitioner moved from Houston to Atlanta, Georgia, to accept an adult education teaching position with Atlanta Metropolitan College.

---

[3]Petitioner purchased the Cleveland property as a single parcel of land and subsequently subdivided it into two adjacent parcels.  For purposes of simplicity, we refer to the Cleveland property as a single parcel.

During 2004 petitioner incurred various expenses on behalf of HOME relating to: (1) Attending board meetings and conventions; (2) attending the luncheons for board members and volunteers; (3) conducting workshops; and (4) training volunteers. Some of the expenses relate to travel between: (1) Various locations in and around Houston, Texas; (2) Atlanta, Georgia, and Houston, Texas; (2) Atlanta, Georgia, and Memphis, Tennessee; and (4) Atlanta, Georgia, and Miami, Florida.

During 2004 Petitioner maintained two joint checking accounts with her mother. As relevant here, canceled checks from the joint accounts evidence payments for: (1) Expenses related to the literacy program; (2) cell phone charges for petitioner's mother; (3) expenses related to the move, repair, and renovation of the relocated house; (3) office supplies; and (4) travel expenses, including the costs of meals and lodging.

Petitioner's self-prepared, timely filed 2004 Federal income tax return includes a Schedule A, Itemized Deductions. On the Schedule A petitioner claims a deduction for charitable contributions of $37,274. That deduction includes: (1) Cash donations made directly to Good Shepherd and/or HOME and not in dispute; (2) the $7,920 value of the Cleveland property; (3) the $10,944.50 cost of moving the relocated house; (4) the cost of repairing and renovating the relocated house, the precise amount of which cannot be determined from the record; (5) travel

expenses of $2,692; and (6) cell phone expenses, the precise amount of which cannot be determined from the record.

In the notice of deficiency, respondent disallowed the entire charitable contribution deduction because, as explained in the notice, petitioner "did not establish that the amounts shown were (a) contributions, and (b) paid".

## Discussion

We begin by noting, as we have observed in countless opinions, that deductions are a matter of legislative grace and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[4]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to substantiate claimed deductions by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has

---

[4]Petitioner does not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

been paid or incurred.  See sec. 6001; <u>Hradesky v. Commissioner</u>, <u>supra</u>; sec. 1.6001-1(a), Income Tax Regs.

In general, and subject to numerous conditions and limitations, a taxpayer is allowed to deduct any contributions or gifts made during the year to qualifying organizations for their use.  See sec. 170(a).  The pretrial memoranda submitted by the parties demonstrate that the parties, for the most part, agree on the technical application of section 170 and its corresponding regulations.  Consequently, little technical discussion is necessary here.  Instead, their dispute reduces to various factual disagreements, and we turn our attention to those disagreements.

According to petitioner:  (1) She donated the Cleveland property to HOME in June 2004, and the relocated house was moved there to be used by HOME; (2) the travel expenses all relate to trips incurred on behalf of HOME; and (3) other expenses, such as her mother's cell phone charges and office supplies, although paid to third parties, were paid for goods and/or services used by, or for the benefit of HOME.

According to respondent petitioner has failed to establish that:  (1) She conveyed legal title to the Cleveland property to HOME during 2004.  Consequently the value of the Cleveland property and the costs incurred to have the relocated house moved

there may not be deducted; (2) amounts paid to third parties were paid on behalf of HOME; and (3) travel expenses included in the charitable contribution deduction are other than nondeductible personal expenses.  See sec. 262.

Petitioner acknowledges that the original deeds showing the transfer of the Cleveland property to HOME in 2004 have not been recorded and, for reasons not fully explained, are no longer available.  According to the deeds, the Cleveland property, together with the relocated house, was conveyed to HOME on May 17, 2004.  At trial she produced copies of deeds prepared and notarized in February 2009.  Copies of similar, but not identical, deeds apparently provided to respondent during the examination of petitioner's 2004 return show a signature line for petitioner's mother.  There is no signature line for petitioner's mother on the copies of the deeds notarized in February 2009.

I. Cleveland Property and Relocated House

The charitable contribution deduction petitioner claimed on her 2004 return includes:  (1) The value of the Cleveland property;[5] and (2) the costs of moving and repairing the relocated house.  According to petitioner, she donated the Cleveland property to HOME during 2004 and paid the expenses to

---

[5]The value of the property as shown on petitioner's return is not in dispute.

have the relocated house moved there so it could be used by HOME in pursuit of its charitable goals.[6]

Several factors are examined in determining whether and when a gift, including a charitable contribution, has been made or is complete. See Guest v. Commissioner, 77 T.C. 9, 15-16 (1981). Among and in addition to other requirements, a donor claiming to have made a gift to a donee must establish that legal title to the gift has been irrevocably transferred from the donor to the donee. Id. at 15-16; Weil v. Commissioner, 31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561 (5th Cir. 1936). If, as here, the gift is an interest in real property, then normally the transfer of legal title is evidenced by deed or the equivalent of a deed. Furthermore, if, as here, the gift is made between related parties, then the transaction warrants close scrutiny. See Kimbell v. United States, 371 F.3d 257, 265 (5th Cir. 2004); Estate of Bongard v. Commissioner, 124 T.C. 95, 123 (2005).

The parties agree that Texas law controls whether title to the Cleveland property was effectively transferred to HOME in 2004. See United States v. Natl. Bank of Commerce, 472 U.S. 713, 722 (1985) (quoting Aquilino v. United States, 363 U.S. 509, 513 (1960)). Under Texas law, conveyance by deed requires delivery of the deed. Tex. Prop. Code Ann. sec. 5.021 (West 2004); Noell

---

[6]As of the date of trial, the relocated house had not been renovated to an extent to make it functional.

v. Crow-Billingsley Air Park Ltd. Pship., 233 S.W.3d 408, 415 (Tex. App. 2007). Delivery of a deed is effective if (1) the grantor places the deed within the control of the grantee (2) with the intention that the instrument become operative as a conveyance. Noell v. Crow-Billingsley Air Park Ltd. Pship., supra at 415. The question of delivery of the deed is controlled by the intent of the grantor, and it is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument. Id. The best evidence that a deed has been delivered as required, of course, would be the original deed, or a copy of the original as recorded.

According to petitioner, the deeds to the Cleveland property were delivered to HOME as required. Those deeds, if delivered as petitioner claims, have never been recorded, and the location of the originals is unknown.

Petitioner's position that a deed need not be recorded in order to effectively pass title to real estate is consistent with Texas law; under Texas law an unrecorded deed is binding on the parties to the conveyance. Id. at 416-417 (citing Tex. Prop. Code. Ann. Sec. 13.001(b) (West 2004)). Be that as it may, petitioner's entitlement to a charitable contribution deduction for the Cleveland property faces other obstacles.

First, we are concerned with petitioner's failure to produce copies of the original deeds. She is, and was at all times relevant, an executive officer of HOME and no doubt had access to the financial and asset records of the organization. Second, and perhaps more troubling, within months after the deeds to the Cleveland property were claimed to have been executed and delivered, petitioner shows her mother as the owner of the property on an application for a building permit. Third, and in a similar vein, an estimate from a contractor regarding repairs to the relocated house to be placed on the Cleveland property is directed and addressed to petitioner's mother. Because the evidence is insufficient to support a finding that the Cleveland property was transferred from petitioner to HOME during 2004, she is not entitled to include the value of that property in an otherwise allowable charitable contribution deduction for that year.

Petitioner also included the cost of moving and repairing the relocated house in the charitable contribution deduction claimed on her 2004 return. The relocated house was not used by HOME during 2004. Furthermore, because it is unclear whether HOME obtained legal title to the relocated house during 2004, petitioner is not entitled to any deduction for the cost of any repairs to the house or for mileage claimed to travel between Cleveland, Texas, and Houston, Texas, or elsewhere in connection

with that house.  Nevertheless, the expenses that she incurred to have the relocated house moved from the Good Shepherd property arguably provided a benefit to Good Shepherd, even though not necessarily to HOME.

Unreimbursed expenditures made incident to the rendition of services to a qualifying charitable organization (in this case Good Shepherd) may constitute a deductible contribution. Rockefeller v. Commissioner, 76 T.C. 178, 190-191 (1981), affd. 676 F.2d 35 (2d Cir. 1982); McCollum v. Commissioner, T.C. Memo. 1978-435; Miller v. Commissioner, T.C. Memo. 1975-279; sec. 1.170A-1(g), Income Tax Regs.

As best we can tell from the record, petitioner paid $10,944.50 to have the relocated house moved from Houston, Texas, to the Cleveland property.  Presumably Good Shepherd would have had to incur some expense to have the relocated house moved or razed so the property on which it was located could be used as a parking lot for the church.  To the extent that Good Shepherd realized a financial benefit in excess of the value of the relocated house, petitioner is entitled to include that excess in an otherwise allowable charitable contribution deduction.  See Murphy v. Commissioner, 54 T.C. 249, 252-253 (1970); see also United States v. Am. Bar Endowment, 477 U.S. 105 (1986); sec. 1.170A-1(h), Income Tax Regs.  The record does not allow the Court to determine any such excess; however, if the information

is in the possession of the parties, they can reflect any such allowance in their Rule 155 computations.

II. Other Unreimbursed Expenditures

A. Travel-Related Expenses

Petitioner's claimed charitable contribution deduction includes $2,692 attributable to travel-related expenses for transportation and meals and lodging that petitioner incurred in connection with travel relating to HOME activities.

Section 1.170A-1(g), Income Tax Regs., allows as a charitable contribution deduction transportation expenses and reasonable expenses for meals and lodging incurred while away from home in the course of performing donated services. Miller v. Commissioner, supra. The phrase "while away from home" has the same meaning as when used for purposes of section 162. Sec. 1.170A-1(g), Income Tax Regs. Petitioner's "home" during the relevant period of 2004 was Georgia, a point not in dispute. See Mitchell v. Commissioner, 74 T.C. 578, 581 (1980) (a taxpayer's principal place of employment is his tax home).

The record shows that, among other things, petitioner attended conventions, board meetings, and luncheons which required her to travel between Atlanta, Georgia, and Houston, Texas, and other locations. Because she has properly substantiated the expenses incurred in connection with these trips, see sec. 274(d), she is entitled to include the cost of

the trips in her otherwise allowable charitable contribution deduction.[7]

B.  <u>Expenditures Related to Office Supplies and the
    Literacy Program</u>

Petitioner's claimed charitable contribution deduction includes an amount attributable to expenditures related to: (1) Office supplies; and (2) the literacy program.

To substantiate the deduction petitioner provided:  (1) Receipts and canceled checks for, among other things, office supplies and schoolbooks; (2) cell phone account statements for the 3-month span during which petitioner's mother's cell phone was used as the contact number for the literacy program; and (3) a statement from HOME certifying that petitioner was not reimbursed for the expenses.

A cell phone is "listed property" and subject to the strict substantiation requirements of section 274(d).  Sec. 280F(d)(4)(A)(v).  A taxpayer must establish the amount of business use and the amount of total use for the property to substantiate the amount of expenses for listed property.  Sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg.

---

[7]We note that sec. 170(j) prohibits a deduction for unreimbursed travel expenses incurred incident to the rendition of charitable services, "unless there is no significant element of personal pleasure, recreation, or vacation in such travel." Although a portion of petitioner's travel-related expenses is attributable to trips to Houston, Texas, where some of her family resides, there is no direct evidence suggesting that her trips to Houston, or otherwise, contained a significant element of personal pleasure.

46016 (Nov. 6, 1985). Petitioner introduced cell phone bills that partially substantiate the amounts of the claimed deductions. Petitioner, however, failed to establish the amounts of time that her mother used her cell phone for business and personal purposes. Petitioner's deduction for cell phone expenses is disallowed.

Otherwise, we find that petitioner has adequately substantiated expenses related to office supplies and the literacy program, and she is therefore entitled to a charitable contribution deduction for the costs of these items.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.