**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-20

UNITED STATES TAX COURT

BRIDGETT JEANETTE BELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13948-11S.                    Filed March 4, 2013.

Bridgett Jeanette Bell, pro se.

<u>James H. Brunson III</u> and <u>David Delduco</u>, for respondent.

SUMMARY OPINION

MARVEL, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.   Pursuant

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code, as amended and in effect for the year in issue, and all Rule references are to
                                                        (continued...)

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated March 11, 2011, respondent determined a deficiency in petitioner's 2006 Federal income tax of $6,017 and an accuracy-related penalty under section 6662(a) of $1,203. The issues for decision are: (1) whether petitioner is entitled to the noncash charitable contribution deduction she claimed on her Schedule A, Itemized Deductions; and (2) whether petitioner is liable for the accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioner resided in Georgia when she filed her petition.

Petitioner's Background

Petitioner holds both a bachelor's degree in business management and a master's degree in management. She is a licensed certified public accountant (C.P.A.). For the past 15 years she has taught college-level business and accounting classes. During 2006 she taught accounting and business courses at Atlanta

---

[1](...continued)
the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

Metropolitan College and also taught some classes at the University of Phoenix and Western International University.

Although petitioner resided in Georgia during the year in issue, she also owned property in Houston, Texas (Houston property). Her brother, Robert Bell, rented the Houston property from her during 2006. Petitioner's mother, Jennie Bell, also resided in the Houston area during 2006.

Holistic Opportunities for Mental Empowerment

In 2001 petitioner (and others) established and caused to be incorporated Holistic Opportunities for Mental Empowerment (HOME). HOME provided adult basic literacy classes in Texas. At all relevant times HOME qualified as an organization described in section 501(c)(3) and was listed as an organization eligible to receive tax-deductible charitable contributions in Internal Revenue Service (IRS) Publication 78, Cumulative List of Organizations described in Section 170(c) of the Internal Revenue Code of 1986. HOME did not file a Form 990, Return of Organization Exempt From Income Tax, for 2006. In 2010 the IRS revoked HOME's Federal tax-exempt status for failure to file a Form 990 for three consecutive years.

During 2006 petitioner served as the president of HOME and as president of HOME's board of directors. HOME's board of directors comprised petitioner,

Terence Freeman, Poat Givens, Byron Riley, and Tiffany Taylor. Petitioner attended several HOME board meetings during 2006.

HOME operated its literacy program at the facilities of Good Shepherd Church (Good Shepherd) in Houston, Texas. HOME had no paid employees and relied on volunteers to teach the classes. Both petitioner and Mr. Bell taught literacy classes at Good Shepherd.

Petitioner's Tax Reporting and the Notice of Deficiency

Petitioner untimely filed a Form 1040, U.S. Individual Income Tax Return, for 2006, which she signed on October 13, 2008. On her Form 1040 petitioner reported that she had adjusted gross income of $91,491 and taxable income of $18,569. She attached a Schedule A on which she claimed a deduction for charitable contributions totaling $45,746. On an attached Form 8283, Noncash Charitable Contributions, she reported noncash charitable contributions to HOME of land[2] and building materials valued at $4,236 and $24,662, respectively. Petitioner signed Part IV, Donee Acknowledgment, on behalf of HOME in her capacity as its president. The acknowledgment is dated October 13, 2008.

---

[2]On the Form 8283 petitioner reported that she acquired the land in August 2006 and contributed the land to HOME on August 1, 2006.

Respondent subsequently mailed to petitioner the notice of deficiency in which respondent disallowed the entire amount of petitioner's claimed noncash charitable contribution deduction.

Petitioner's Alleged Noncash Contributions to HOME in 2006

In August 2006 petitioner purchased several properties in Liberty, Texas (Liberty properties). All but one of the properties were unimproved. A mobile home was on one of the properties. At some point petitioner prepared several warranty deeds conveying the properties and the mobile home to HOME. The deeds are dated August 24, 2006. All of the deeds bear petitioner's signature and contain a statement that they were "[s]igned, sealed and delivered in the presence of" petitioner. All of the deeds bear notarizations dated April 28, 2010, reflecting that petitioner appeared on that date and acknowledged executing the deeds. Petitioner alleges that she delivered the executed deeds to HOME in 2006, and she introduced unsigned and undated board meeting minutes that purport to confirm delivery of the deeds to HOME in 2006.

During 2006 petitioner paid various expenses purportedly on behalf of HOME, including expenses that she claimed were for hosting board meetings, luncheons, and other celebrations for both board members and volunteers. Some of the expenses were for travel between: (1) various locations in and around Houston,

Texas; (2) Atlanta, Georgia, and Houston, Texas; and (3) Atlanta, Georgia, and New Orleans, Louisiana. Petitioner classified all of these purported expenses as "building materials" on her 2006 return and deducted them as noncash charitable contributions.

At trial petitioner introduced copies of various deeds, receipts, and invoices and two summary logs which she prepared sometime after the examination of her 2006 return began and a travel log,[3] in an effort to substantiate the noncash charitable contribution deduction she claimed. Except as noted herein, petitioner has not sustained her burden of proving that the documentation she introduced into evidence is credible, and she has not convinced us that her alleged noncash contributions were made or, if made, were paid primarily for charitable purposes.

Discussion

I.    Burden of Proof

In general, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden of proof, however, may shift to the Commissioner under section 7491(a)(1) if certain requirements are met.

_____

[3]Petitioner claimed that she prepared the travel log during respondent's examination using Excel spreadsheets that she had prepared during 2006.

See sec. 7491(a)(1) and (2); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Petitioner does not contend that section 7491(a)(1) applies, and the record does not establish that she satisfied the section 7491(a)(2) requirements. Accordingly, petitioner bears the burden of proving that respondent's determinations are erroneous.

II.    Charitable Contribution Deduction

A.    In General

Deductions are a matter of legislative grace, and a taxpayer ordinarily must prove that she is entitled to a claimed deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer is required to maintain records to substantiate claimed deductions and to establish her correct tax liability. Higbee v. Commissioner, 116 T.C. at 440; see also sec. 6001. The taxpayer must produce those records upon the request of the Secretary. Sec. 7602(a); see also sec. 1.6001-1(e), Income Tax Regs. Substantiation is generally adequate if it establishes the amount and purpose of the claimed deduction. Higbee v. Commissioner, 116 T.C. at 440; see also Hradesky v. Commissioner, 65 T.C. 87 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

Ordinarily, a taxpayer may deduct charitable contributions made during the taxable year. Sec. 170(a). Charitable contributions, however, may be deducted only to "the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year." Sec. 170(b)(1)(A). A charitable contribution deduction is allowed only if verified under regulations promulgated by the Secretary. Sec. 170(a)(1). A taxpayer who deducts charitable contributions must maintain adequate documentation to substantiate them. See sec. 1.170A-13(a)(1), Income Tax Regs.

B.    Petitioner's Alleged Noncash Charitable Contributions

On her 2006 return petitioner deducted noncash charitable contributions to HOME of land and building materials valued at $4,236 and $24,662, respectively. Petitioner signed the attached Form 8283 in her capacity as president of HOME, acknowledging her contribution of land valued at $4,236 and building materials valued at $24,662.[4]

---

[4]Petitioner also introduced a written acknowledgment she prepared dated December 23, 2006, certifying that in 2006 she contributed to HOME land valued at $4,236, building materials valued at $18,485, and travel, meals, and entertainment expenses valued at $7,146. Although the acknowledgment contains a statement below petitioner's signature as donor that HOME "accepts the services/property indicated above", the statement is not signed on behalf of HOME.

In addition to various deeds, invoices, and receipts, petitioner introduced two itemized logs purporting to show her noncash charitable contributions for 2006, including the date of each contribution, the amount of the contribution, and the purpose of the contribution. The logs were not prepared or maintained contemporaneously; rather, petitioner created the logs ostensibly to summarize the documentation she maintained to substantiate her 2006 contributions. On the logs petitioner identified certain items as building materials or property expenses. Both logs purport to show that she purchased building materials and paid property expenses of $18,555, including a $15,000 payment to a subcontractor for work at a property in Cleveland, Texas (Cleveland property),[5] a $100 payment to an architect,

---

[5]On April 18, 2011, this Court issued an opinion with respect to petitioner's 2004 taxable year. Bell v. Commissioner, T.C. Summary Opinion 2011-54. Pursuant to Fed. R. Evid. 201, we take judicial notice of this Court's opinion. In Bell this Court found that petitioner acquired the Cleveland property in 1999. Id. Petitioner contended that she donated the Cleveland property to HOME during 2004 and was entitled to a charitable contribution deduction with respect to the Cleveland property for 2004. Id. This Court found that petitioner was not entitled to a charitable contribution deduction with respect to the Cleveland property because she failed to introduce sufficient evidence to show that she transferred the property to HOME during 2004. Id. In particular, the Court noted that petitioner listed her mother as the owner of the Cleveland property on multiple documents prepared months after the purported delivery of the Cleveland property. While we do not rely on the findings in Bell to support our holding in this opinion, the Court's findings in Bell raise significant questions regarding whether HOME owned the Cleveland property and used the Cleveland property in pursuit of its charitable mission during the year at issue. In the absence of testimony or other evidence to support a finding

(continued...)

$607 for property taxes, and $2,847 for the contribution of various physical building materials. The logs also purport to show that petitioner paid for airline tickets, airport parking, gas, and rental cars, totaling $5,427, and for meal and entertainment expenses, including expenses attributable to board meetings and various celebrations for volunteers and students, totaling $1,397.

Petitioner also claims that she made additional contributions to HOME as follows: (1) books and a cassette tape valued at $31 and $8, respectively; (2) a $36 payment she purportedly made on behalf of HOME for rental of a post office box; and (3) a $20 fee she paid to attend a conference on behalf of HOME.

Petitioner's claimed noncash charitable contribution deduction consisted of both contributions of property and various cash payments that she asserts

---

[5](...continued)
that HOME owned the Cleveland property and planned to use the refurbished Cleveland property for charitable purposes, we cannot find that the subcontractor payment, described infra pp. 24-25, the architect payment, described infra pp. 25-26, or the property taxes, described infra pp. 26-27 were directly connected with and solely attributable to petitioner's rendition of services to HOME. See Van Dusen v. Commissioner, 136 T.C. 515, 525 (2011).

were unreimbursed volunteer expenses.[6] Because the recordkeeping requirements for the contribution of property differ from the recordkeeping requirements for unreimbursed volunteer expenses, see Van Dusen v. Commissioner, 136 T.C. 515, 530-532 (2011), we first will address whether petitioner satisfied the recordkeeping requirements with respect to her reported property contributions as follows: (1) $4,236 for the Liberty properties; and (2) $2,847 for various building materials. We then will address whether petitioner satisfied the recordkeeping requirements with respect to her reported unreimbursed volunteer expenses as follows: (1) $15,000 for the subcontractor payment; (2) $100 for the architect payment; (3) $607 for her payment of property taxes; (4) $5,427 for travel expenses; (5) $1,397 for meal and entertainment expenses; (6) $36 for rental of the post office box; (7) $20 for the conference fee; and (8) $31 and $8 for the purchase of books and the cassette tape, respectively.

---

[6]Petitioner's itemized logs also show a number of purported noncash charitable contributions to Youth Under Construction (YUC). Both logs show that petitioner made noncash contributions of $125 to YUC, consisting solely of unreimbursed expenditures. Petitioner did not report any noncash contributions to YUC on her Form 8283 for 2006. It is unclear whether she included these contributions to YUC in her calculation of noncash contributions to HOME in preparing her 2006 return. Regardless, she has introduced no evidence to show that YUC was a charitable organization. Accordingly, petitioner is not entitled to a deduction for noncash contributions to YUC.

1.      Contributions of Real Estate and Building Materials

For any charitable contribution of $250 or more, the taxpayer must obtain a

contemporaneous written acknowledgment from the donee.  Sec. 170(f)(8)(A).

Section 170(f)(8)(B) provides that the contemporaneous written acknowledgment

must include the following:

> (B)  Content of acknowledgment.--An acknowledgment meets the requirements of this subparagraph if it includes the following information:
>
> > (i)  The amount of cash and a description (but not value) of any property other than cash contributed.
> >
> > (ii)  Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).
> >
> > (iii)  A description and good faith estimate of the value of any goods or services referred to in clause (ii) or, if such goods or services consist solely of intangible religious benefits, a statement to that effect.

Section 170(f)(8)(C) provides that a written acknowledgment is contemporaneous

when the taxpayer obtains it on or before the earlier of:  (1) the date the taxpayer

files a return for the year of contribution; or (2) the due date, including extensions,

for filing that return.

The only written acknowledgment from HOME that petitioner introduced to

satisfy the section 170(f)(8) requirement was the acknowledgment on the Form 8283

attached to her 2006 return. Petitioner signed part IV of the Form 8283, titled "Donee Acknowledgment", as president of HOME. The only contributions identified on the Form 8283 to which the acknowledgment relates are land purchased in August 2006 at a cost of $4,236 and building materials with an appraised fair market value (equal to petitioner's alleged cost) of $24,662.

In addition to the written acknowledgment requirement, the regulations establish a three-tier recordkeeping system for contributions of property other than money. For a noncash contribution of $500 or less, the taxpayer must substantiate the contribution with a receipt from the donee indicating the donee's name, the date and location of the contribution, and "[a] description of the property in detail reasonably sufficient under the circumstances." Sec. 1.170A-13(b)(1), Income Tax Regs. If the taxpayer makes a charitable contribution of property other than money and claims a deduction in excess of $500, the taxpayer must maintain written records showing the manner of acquisition of the item, the approximate date of acquisition, and the cost or adjusted basis of the property. Sec. 1.170A-13(b)(3), Income Tax Regs.; see also Lattin v. Commissioner, T.C. Memo. 1995-233. Lastly, if the noncash contribution deduction exceeds $5,000, the taxpayer must (1) obtain a qualified appraisal for the contributed property, (2) attach a fully completed appraisal summary (i.e., a Form 8283) to the tax return on which the deduction is claimed, and

(3) maintain records pertaining to the claimed deduction in accordance with section 1.170A-13(b)(2)(ii), Income Tax Regs. See sec. 1.170A-13(c)(2), Income Tax Regs.

### a. Liberty Properties

In addition to the other requirements related to noncash charitable contributions, a donor claiming to have made a gift of property must establish that legal title to the gift has been irrevocably transferred from the donor to the donee. See Guest v. Commissioner, 77 T.C. 9, 15-16 (1981); Weil v. Commissioner, 31 B.T.A. 899, 906 (1934), aff'd, 82 F.2d 561 (5th Cir. 1936). If the gift is an interest in real property, the transfer of legal title generally is evidenced by a deed or the equivalent of a deed. If the gift is made between related parties, then the transaction warrants close scrutiny. See Kimbell v. United States, 371 F.3d 257, 265 (5th Cir. 2004); Estate of Bongard v. Commissioner, 124 T.C. 95, 123 (2005).

Whether a taxpayer owns an interest in, or exercises a right with respect to, property is determined under State law. See Aquilino v. United States, 363 U.S. 509 (1960). Accordingly, Texas law controls whether petitioner transferred title of the Liberty properties to HOME in 2006. See United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985).

Under Texas law, conveyance by deed requires delivery of the deed. <u>See</u> Tex. Prop. Code Ann. sec. 5.021 (West 2004); <u>Noell v. Crow-Billingsley Air Park Ltd. P'ship</u>, 233 S.W.3d 408, 415 (Tex. App. 2007). A grantor effectively delivers a deed if she places the deed within the control of the grantee with the intention that the instrument become operative as a conveyance. <u>Noell</u>, 233 S.W.3d at 415. Whether a deed was delivered is controlled by the intent of the grantor and is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument. <u>Id.</u> If a grantor delivers a deed, the deed is binding even if neither party records it. <u>See</u> Tex. Prop. Code Ann. sec. 13.001(b) (West 2004). "Without evidence to the contrary, the law presumes a grantor delivers a deed on the date of execution and acknowledgment." <u>Burgess v. Easley</u>, 893 S.W.2d. 87, 90 (Tex. App. 1994).

Respondent contends that petitioner has failed to establish that she conveyed legal title of the Liberty properties to HOME during 2006. Respondent also contends that petitioner has failed to produce a contemporaneous written acknowledgment with respect to the Liberty properties.

The record contains a copy of a receipt from the Liberty County Sheriff's Department showing that petitioner purchased several properties for $4,236.[7] The record also contains copies of warranty deeds, one for each of the properties petitioner purportedly donated to HOME, signed by petitioner and dated August 24, 2006. However, the deeds were not notarized until 2010, and the notarizations reflect that petitioner appeared in 2010 and acknowledged in the notary's presence that she signed the deeds.

Although petitioner testified that she signed the deeds in 2006, her testimony appears to conflict with the notarizations. More importantly, the notarizations confirm that the deeds were still in petitioner's possession in 2010. Because petitioner was on both sides of the alleged contribution transactions, in order for us to find that she actually delivered the deeds to HOME in 2006, she must show by a preponderance of credible evidence that she released physical possession, custody, and control over the deeds and actually gave the deeds to HOME in 2006. Absent that proof, there was nothing to prevent petitioner from destroying the deeds and reasserting her ownership over the properties if and when her self-interest dictated she do so.

---

[7]The date on the receipt from the Liberty County Sheriff's Department is illegible.

The timing of the notarizations is troublesome given that HOME's tax-exempt status was revoked in 2010. The lack of any independent third-party verification of the actual delivery of the deeds to HOME is also troublesome given that petitioner executed all the relevant documentation with respect to the purported gift of the properties to HOME as both the donor and the authorized representative of HOME. Under such circumstances, at a minimum, adequate and credible substantiation of a charitable contribution of property would seem to require verification of the contribution by an independent third party, or at least by someone other than the donor who could testify that HOME actually received the deeds and accepted the contributions.

Although petitioner offered minutes of a board meeting purportedly held on October 23, 2006, as evidence that HOME acknowledged and accepted her contribution of the Liberty properties, the minutes apparently were prepared by her, are not signed or dated, and do not contain any information as to when they were prepared. We do not find this documentation credible in the absence of verification from a third party acting on behalf of HOME who can confirm personally that someone other than petitioner accepted delivery of the deeds on behalf of HOME.

While this conclusion may seem harsh, it becomes less so when we consider the other evidence in the record. Petitioner, a C.P.A. and a professor of accounting,

failed to timely file her 2006 return. As president of HOME, petitioner failed to ensure that HOME timely filed Forms 990 for multiple years, including 2006. Petitioner asks us to believe that she would take the time to arrange for the preparation of and/or prepare the deeds and board meeting minutes to document her charitable contributions while, during the same timeframe, she failed to file her Federal income tax return and the Form 990 on behalf of HOME. We simply cannot do so given the complete lack of any verification of the contributions by a third party. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (the Court is not required to accept unverified testimony).

Because petitioner has failed to convince us that she actually delivered the deeds conveying the Liberty properties to HOME in 2006, we sustain respondent's determination disallowing the charitable contribution deduction she claimed with respect to the Liberty properties on her 2006 return.

### b. Building Materials

On her 2006 return petitioner claimed a noncash charitable contribution deduction for building materials of $24,662. Petitioner's records, however, reveal that petitioner included in this $24,662 amount a variety of expenditures for items that were not building materials. Petitioner nevertheless claims that she paid for and contributed a variety of items in 2006 for the benefit of HOME and that those items

are deductible as charitable contributions.  We start with petitioner's claim regarding her contribution of building materials.

The evidence shows purchases of building materials of $2,847 during 2006, so we evaluate whether petitioner has substantiated that:  (1) she purchased the materials; and (2) she contributed the materials to HOME in 2006.  Because her contribution of building materials exceeds $500 but does not exceed $5,000, petitioner must introduce a contemporaneous written acknowledgment from HOME as well as written records showing the manner of acquisition, the approximate date of acquisition, and the cost or adjusted basis of the building materials.  See sec. 1.170A-13(b)(3), Income Tax Regs.; see also Lattin v. Commissioner, T.C. Memo. 1995-233; sec. 1.170A-13(c)(1)(i), Income Tax Regs.

To substantiate her reported contributions petitioner introduced the following:

- check registry receipts dated January 11, 2006, showing payments of $120.81 and $994.32, respectively, to Montalbano Lumber Co., Inc. (Montalbano Lumber);

- a check registry receipt dated January 18, 2006, showing a payment of $148.93 to Montalbano Lumber;

- invoices from Montalbano Lumber dated January 11, 2006, for $994.32 and $137.43;

- an incomplete invoice from Montalbano Lumber dated January 18, 2006;[8]

- an invoice from Montalbano Lumber dated January 30, 2006, for $31.92;

- receipts from Lowe's dated January 17 and 19, 2006, for $100.45 and $8.12, respectively;

- a receipt from McCoy's dated January 9, 2006, for $19.46;

- a receipt from Home Depot dated January 22, 2006, for $56.81;

- an illegible receipt from Home Depot purportedly for a purchase of $96.20, along with a copy of petitioner's Washington Mutual account statement showing a purchase of $96.20 at Home Depot on November 27, 2006; and

- a receipt from a lumberyard dated January 18, 2006, for $504.

None of the invoices from Montalbano Lumber include any information regarding the identity of the purchaser. Although the invoices are marked paid, with

---

[8]The relevant invoice from Montalbano Lumber shows a handwritten total of $648.93. A second page attached to this invoice shows that one item was returned, eliminating $45.47 from the total purchase price.

respect to the invoices for $31.92 and $137.43 and the incomplete invoice, petitioner introduced no evidence to show that she actually purchased the materials or that she made the purchases using her personal funds rather than HOME's funds. The lumberyard receipt does not show the name of the purchaser, the delivery address, or any other identifying information.

Furthermore, petitioner purchased most of the building materials in January 2006, before her purchase and donation of the Liberty properties. While petitioner testified that, in addition to donating building materials for the development of the Liberty properties, she also donated building materials for construction work with respect to another HOME property, she did not testify regarding the location or ownership of the other property or the nature and purpose of the improvements.[9] With respect to the building materials petitioner purchased after her alleged contribution of the Liberty properties, we have found that she has not established that she contributed the properties to HOME during 2006, and we reach the same

[9]Petitioner's records show that she had unreimbursed expenditures with respect to the Cleveland property, purportedly owned by HOME. We note that some of the Montalbano Lumber invoices appear to relate to the Cleveland property. As we discussed supra note 5, petitioner has failed to show that HOME owned the Cleveland property or that her expenses with respect to the Cleveland property were directly connected with the performance of charitable work.

conclusion with respect to the building materials allegedly purchased for those properties.

Petitioner introduced no documents prepared by third parties acknowledging her contributions, and she called no witnesses to corroborate her testimony. Accordingly, we find that petitioner failed to introduce credible and adequate written records to substantiate her contributions of the building materials to HOME during 2006, and consequently, we conclude that she is not entitled to the deduction she claimed with respect to the building materials.

### 2. Unreimbursed Volunteer Expenses

No deduction is allowed under section 170 for a contribution of services. However, "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution." Sec. 1.170A-1(g), Income Tax Regs. To be deductible, unreimbursed expenses must be directly connected with and solely attributable to the rendition of services to a charitable organization. Van Dusen v. Commissioner, 136 T.C. at 525; Saltzman v. Commissioner, 54 T.C. 722, 724 (1970). "In applying this standard, courts have considered whether the charitable work caused or necessitated the taxpayer's expenses." Van Dusen v. Commissioner, 136 T.C. at 525.

Contributions through the payment of unreimbursed volunteer expenses of less than $250 are subject to the requirements for contributions of money set forth in section 1.170A-13(a), Income Tax Regs. Section 1.170A-13(a)(1), Income Tax Regs., requires the taxpayer to maintain a canceled check or a receipt from the donee organization. In the absence of a canceled check or a receipt from the donee organization, the taxpayer must maintain other reliable written records showing "the name of the payee, the date of the payment, and the amount of the payment." Van Dusen v. Commissioner, 136 T.C. at 534; see also sec. 1.170A-13(a)(1), Income Tax Regs.

To claim a charitable contribution deduction of $250 or more, the taxpayer must substantiate the contribution with a contemporaneous written acknowledgment from the donee organization. Sec. 170(f)(8)(A); sec. 1.170A-13(f)(1) and (2), Income Tax Regs.; see supra pp. 12-14. A taxpayer who incurs unreimbursed expenses "incident to the rendition of services" is deemed to have obtained such acknowledgment if the taxpayer (1) has adequate records to substantiate the amount of the expenditures and (2) obtains by a prescribed date a statement prepared by the donee organization containing specified information. See sec. 1.170A-13(f)(10), Income Tax Regs.; see also Van Dusen v. Commissioner, 136 T.C. at 536. Contributions of less than $250 to the same donee are not subject to these additional

requirements even if the aggregate donations to the donee exceed $250 within the same taxable year. See Van Dusen v. Commissioner, 136 T.C. at 530 n.26; sec. 1.170A-13(f)(1), Income Tax Regs.

### a. Subcontractor Payment

Petitioner claims that she paid for a subcontractor to perform work at the Cleveland property. To substantiate the claimed contribution, petitioner introduced a copy of her Chase account statement for February 11 through March 10, 2006. The statement shows that on February 28, 2006, petitioner wrote a cash advance check for $15,000. The statement includes a notation by petitioner indicating that the $15,000 check was a cash advance to pay Thompson Foundation Repair on behalf of HOME. She also introduced a copy of an invoice from Thompson Foundation Repair dated March 21, 2006. The invoice shows that petitioner paid $15,000 for work to be performed at the Cleveland property.

Petitioner did not introduce any credible evidence that HOME owned the Cleveland property in 2006. Without that proof, there is no foundation for a finding that petitioner's payment to the subcontractor with respect to the Cleveland property, purportedly for HOME's exclusive use and benefit, was for charitable purposes.

Petitioner introduced no other evidence to show the ownership of the Cleveland property or to show that HOME was using the property for charitable purposes during 2006. She introduced no credible evidence to show how the subcontractor's repairs would further HOME's mission of providing adult literacy classes. The only acknowledgment by HOME of any contribution by petitioner in the record identified only a contribution of the properties and the building and not any payments to a subcontractor or for other expenses. Without such evidence, we cannot find that the subcontractor expenses were directly connected with and solely attributable to petitioner's rendition of services to HOME or that HOME acknowledged the contribution. See Van Dusen v. Commissioner, 136 T.C. at 525. Accordingly, petitioner is not entitled to a charitable contribution deduction of $15,000 for the subcontractor payment. See supra note 5.

b. Architect Payment

In her itemized logs petitioner represented that she made a cash payment to an architect for work on a building owned by HOME. Petitioner introduced a copy of her Washington Mutual account statement for August 18 through September 20, 2006. The statement shows that on September 8, 2006, petitioner withdrew cash of $101.50 from a bank in Cleveland, Texas. The statement includes a notation by petitioner indicating that $100 in cash was a payment to an architect.

Petitioner did not introduce a receipt, invoice, or acknowledgment from the architect showing that she paid $100 on behalf of HOME. She did not testify regarding the payment or the payee. Petitioner has failed to introduce records to substantiate the identity of the payee. Accordingly, petitioner is not entitled to a charitable contribution deduction of $100 for the purported architect payment.[10] See Van Dusen v. Commissioner, 136 T.C. at 534.

### c. Property Taxes

In her itemized logs petitioner also represented that she paid property taxes of $607 with respect to the Cleveland property. Petitioner introduced a copy of a check receipt showing payment of $607 to Liberty County. The check receipt bears a date of January 30, 2006. Petitioner testified that she paid property taxes with respect to the Liberty properties using funds in her personal checking account. She did not testify regarding the payment of property taxes with respect to the Cleveland property.

---

[10]Furthermore, the record shows that the payment likely related to the Cleveland property. As stated supra p. 25 and note 5, petitioner failed to introduce sufficient evidence to show that expenditures related to the Cleveland property were directly connected with and solely attributable to her rendition of services to HOME. Accordingly, even if we found that petitioner introduced sufficient evidence to substantiate the reported payment, she would not be entitled to deduct this amount.

Pursuant to rule 201 of the Federal Rules of Evidence, we take judicial notice of the fact that the Cleveland property and the Liberty properties are in Liberty County, Texas. The record shows that petitioner paid the property taxes with respect to the Cleveland property. However, as stated supra p. 25 and note 9, petitioner failed to introduce any credible evidence to show that HOME owned the Cleveland property or that the expenditures related to the Cleveland property were directly connected with and solely attributable to her rendition of services to HOME. Accordingly, petitioner is not entitled to a charitable contribution deduction of $607 for the payment of property taxes.

### d. Travel Expenses

A taxpayer may deduct "out-of-pocket transportation expenses necessarily incurred in performing donated services". Sec. 1.170A-1(g), Income Tax Regs. However, section 170(j) provides that no deduction is allowed "for traveling expenses (including amounts expended for meals and lodging) while away from home, whether paid directly or by reimbursement, unless there is no significant element of personal pleasure, recreation, or vacation in such travel." As this Court has stated: "[T]ravel expenditures which include a substantial, direct, personal benefit * * * are not deductible." Tafralian v. Commissioner, T.C. Memo. 1991-33;

see also <u>Babilonia v. Commissioner</u>, 681 F.2d 678, 679 (9th Cir. 1982) (holding that

when a contribution benefits both the taxpayer and the charitable organization,

the taxpayer's primary purpose controls), <u>aff'g</u> T.C. Memo. 1980-207.[11]

Petitioner traveled to Houston multiple times during 2006. Although she

testified that she deducted only the travel expenditures related to trips to Houston

during which she was representing HOME the entire time, we do not find this self-

serving testimony credible, given the frequency and timing of the trips, the fact that

petitioner's immediate family lived in the Houston area, and the complete lack of

testimony by any third party on behalf of HOME.

An examination of petitioner's evidence supports our conclusion. To

substantiate her claimed travel expenditures, petitioner introduced her itemized logs,

---

[11]Relevant legislative history supports our conclusion that the key inquiry is focused on the extent and duration of the taxpayer's charitable activities during the trip:

> In determining whether travel away from home involves a significant element of personal pleasure, recreation, or vacation, the fact that a taxpayer enjoys providing services to the charitable organization will not lead to denial of the deduction. * * * [A] taxpayer who only has nominal duties relating to the performance of services for the charity, or who for significant portions of the trip is not required to render services, is not allowed any charitable deduction for travel costs.

H.R. Rept. No. 99-426, at 129 (1985), 1986-3 C.B. (Vol. 2) 1, 129.

various receipts, and a travel itinerary for 2006. The logs purport to show that she incurred travel expenses totaling $5,427. Petitioner also introduced various receipts as follows:

- receipts for parking at the Atlanta airport for $40, $40, $50, and $90. The dates on the receipts are illegible;[12]

- a receipt for parking at the Atlanta airport, dated March 13, 2006, for $56;

- a receipt for parking at the Atlanta airport from June 10 through 12, 2006, for $30;

- a receipt for parking at the Birmingham International Airport from July 29 through August 3, 2006, for $42;

- a receipt for gas purchased at the Houston airport for $5. The date is illegible;[13]

- receipts for gas purchased in Cleveland on May 13, 2006, in the amounts of $1.02 and $41.35;

_____

[12]According to petitioner's itemized logs, the receipts relate to the following dates: (1) April 10, 2006, for $40; (2) October 2, 2006, for $40; (3) October 23, 2006, for $50; and (4) December 27, 2006, for $90.

[13]According to petitioner's itemized logs, she incurred this expense on May 10, 2006.

- receipts showing that petitioner rented a car at the Houston airport as follows: (1) for March 8 through 13, 2006, for $185.93; (2) for May 25 through 30, 2006, for $148.50; (3) for July 29 through August 3, 2006, for $154.71; (4) for October 19 through 23, 2006, for $164.58; (5) for November 9 through 13, 2006, for $148.56; and (6) for December 19 through 27, 2006, for $230.13;

- a confirmation for a flight on January 6, 2006, from Houston to Atlanta to New Orleans for $122.60; and

- confirmations for round-trip flights between Atlanta and Houston as follows: (1) for April 7 through 10, 2006, for $404.03; (2) for May 11 through 30, 2006, for $224.10; (3) for September 29 through October 2, 2006, for $420.90; (4) for October 19 through 23, 2006, for $214.10; and (5) for November 23 through 27, 2006, for $271.71.

Petitioner also introduced two illegible receipts that purport to relate to her travel expenses.[14]

_____

[14]Petitioner introduced a receipt that appears to show her rental of a car from Enterprise Houston. The date and amount on the receipt are illegible. According to petitioner's itemized logs, this receipt relates to a $94.76 expense for overnight travel that she incurred on May 11, 2006. The second receipt appears to show that petitioner paid for parking at the Atlanta airport, but the date and amount on the receipt are illegible. According to petitioner's itemized logs, this receipt relates to a

(continued...)

The record also contains a copy of a travel log purporting to show petitioner's activities with respect to HOME during 2006. According to the travel log petitioner was in Houston performing HOME related duties during the following periods: (1) January 3 through 6, 2006; (2) March 8 through 13, 2006; (3) March 25 through 27, 2006; (4) April 7 through 10, 2006; (5) May 10 through 30, 2006; (6) June 10 through 12, 2006; (7) June 30 through July 7, 2006; (8) July 29 through August 3, 2006; (9) September 8 through 11, 2006; (10) September 29 through October 2, 2006; (11) October 19 through 23, 2006; (12) November 9 through 13, 2006; (13) November 23 through 27, 2006; and (14) December 8 through 9, 2006; and (15) December 19 through 27, 2006.

There are several problems with petitioner's travel log and activity log. First, the travel log does not bear a date showing when petitioner created the log but bears only a facsimile date of August 3, 2011. Petitioner testified that she prepared some documents during the pendency of her audit. While petitioner testified that she prepared the travel log from an Excel spreadsheet she maintained in 2006, she did not introduce any credible evidence to support such a finding. We infer that the

[14](...continued)
$48 expense for overnight travel she incurred on November 13, 2006.

travel log is not a contemporaneous recordation of petitioner's activities with respect to HOME.[15]

Second, petitioner included in her HOME-related activities some activities that appear to be personal or recreational. For instance, petitioner included time spent at worship services at Good Shepherd; in most instances, the worship services were the only allegedly HOME-related activity petitioner participated in that day. Additionally, petitioner's activity log shows that she spent 4.5 hours reviewing magazines and books for decorating ideas.

Third, while it is credible that petitioner participated in HOME activities during some or all of her trips to Houston, we do not find her logs to be credible. For instance, petitioner's activity log shows that on March 10 and 11, 2006, she spent seven hours and six hours, respectively, meeting with volunteers to discuss the literacy program and potential improvements; but the log does not disclose the names of the persons with whom she met. During 2006 HOME operated only one literacy program, and it appears that the number of volunteers involved in the program was quite small. We are simply not convinced, absent corroboration, that

---

[15]Sec. 1.170A-13(a)(2)(i), Income Tax Regs., provides that the taxpayer must establish that the written records produced are reliable. Sec. 1.170A-13(a)(2)(i)(A), Income Tax Regs., provides that "[t]he contemporaneous nature of the writing evidencing the contribution" is one factor to consider in evaluating the reliability of written records.

petitioner devoted 13 hours over a two-day period to a discussion of the literacy program.

Furthermore, while petitioner testified that she deducted only those expenses related to trips during which she was representing HOME in a substantial capacity, her receipts and itemized logs do not support that testimony. For instance, petitioner deducted the cost of renting a car for her trip to Houston from March 8 through 15, 2006; she also deducted the cost of parking at the Atlanta airport. Petitioner did not deduct the cost of her flight to Houston, and her itemized logs show that she incurred the parking fees on March 13, 2006. Petitioner deducted gas she purchased on May 10, 2006; however, her flight confirmations show that she did not arrive in Houston until May 11, 2006. Additionally, petitioner deducted gas purchased in Cleveland on May 13, 2006, but she did not deduct the cost of renting a car for that trip. She deducted the cost of parking at the Atlanta airport from July 29 through August 8, 2006, as well as the cost of her car rental for that period, but she did not deduct the cost of her flight to Houston. She also deducted the entire cost of her flight on January 6, 2006, from Houston to Atlanta to New Orleans. It does not appear that petitioner deducted travel expenditures on the basis of whether she acted primarily for HOME during the trip as she testified. Rather, it appears from this batch of rather garbled and inconsistent receipts that petitioner deducted all travel

expenditures for which she maintained receipts regardless of how much time she spent on HOME activities. While we believe that petitioner performed some services for HOME during her travels to Houston, she failed to prove that her travel expenditures were necessarily incurred as part of travels during which she engaged predominantly in HOME-related activities. See sec. 1.170A-1(g), Income Tax Regs.

Most importantly, petitioner has failed to show there was no significant element of personal pleasure, recreation, or vacation in her travels to Houston. Petitioner owned property in Houston during 2006. Petitioner's mother and brother both resided in Houston during 2006. Petitioner testified that some of her family lived in Cleveland, where she frequently traveled, and she deducted the cost of travel to Houston over multiple holidays, including Thanksgiving and Christmas, claiming the trips were attributable solely to HOME.

Because petitioner has failed to convince us that the travel expenses she reported were exclusively or even primarily attributable to her HOME activities, we sustain respondent's determination disallowing her charitable contribution deduction attributable to travel expenses.

#### e.   Meal and Entertainment Expenses

A taxpayer may deduct unreimbursed meal and entertainment expenses

incident to the taxpayer's rendition of services to a charitable organization.[16]  See

Louis v. Commissioner, T.C. Memo. 1966-204; sec. 1.170A-1(g), Income Tax Regs.

Petitioner testified that she conducted board meetings and sponsored luncheons and

celebrations for the literacy program volunteers, but she failed to provide the names

of those she hosted.  Petitioner also asserts that she paid for various items such as

candy and other types of refreshments for HOME's benefit.

To substantiate the expenditures petitioner claims she made on behalf of

HOME, petitioner introduced receipts as follows:

- receipts from the Olive Garden as follows:  (1) April 8, 2006, for
  $48.59; (2) May 13, 2006, for $47.09; (3) May 29, 2006, for $80.33;
  (4) July 4, 2006, for $57.47; (5) July 29, 2006, for $54.90; (6) October
  1, 2006, for $58.23; and (7) December 8, 2006, for $57.79;

---

[16]A taxpayer may deduct amounts expended for meals and lodging incurred while traveling away from home in the performance of services for a charitable organization.  See sec. 1.170A-1(g), Income Tax Regs.; see also sec. 170(j). Because we find that petitioner may not claim her travel expenditures as charitable contributions to HOME, petitioner is not entitled to deduct any meal expenditures incurred as part of her claimed travel on behalf of HOME.  However, we still must decide whether petitioner is entitled to deduct as a charitable contribution meal expenditures unrelated to her travel expenditures.

- a receipt from Boudreaux's Cajun Kitchen dated July 6, 2006, for $30.47;

- receipts from Pappasito's for $76.70, $40.11, and $62.28. The dates on the receipts are illegible;[17]

- receipts from Pappasito's as follows: (1) May 12, 2006, for $26; (2) June 10, 2006, for $96.97; (3) June 12, 2006, for $49.35; and (4) December 20, 2006, for $26.68;

- a receipt from Pappasito's dated October 21, 2006. The amount on the receipt is partly illegible;[18]

- a receipt from Brady's Landing for $58.39. The date on the receipt is illegible;[19]

- receipts from Brady's Landing as follows: (1) March 10, 2006, for $32.26; and (2) March 25, 2006, for $50;

---

[17]According to petitioner's itemized logs, the receipts relate to the following dates: (1) June 30, 2006, for $76.70; (2) August 1, 2006, for $40.11; and (3) November 11, 2006, for $62.28.

[18]According to petitioner's itemized logs, the amount on the receipt is $65.53.

[19]According to petitioner's itemized logs, the receipt relates to March 9, 2006.

- receipts from Sam's Club as follows: (1) May 21, 2006, for $50.32;[20] and (2) December 22, 2006, for $32.51;

- receipts from Wal-Mart as follows: (1) July 26, 2006, for $10.30; (2) July 30, 2006, for $24.41;[21] and (3) November 10, 2006, for $25.53;

- a receipt from the Dollar Store for $4.33, on which the date is illegible. The receipt bears petitioner's handwritten notation that she purchased candy for HOME. According to petitioner's itemized logs, the receipt relates to December 11, 2006.

In addition, petitioner introduced two illegible receipts. According to petitioner's itemized log, both are attributable to board meeting expenses: (1) for $28.04 on November 13, 2006; and (2) for $27.06 on May 11, 2006.

Although the above-described receipts document expenditures, there is nothing about the receipts themselves that demonstrates that the expenditures were for HOME. Petitioner did not call any witnesses to testify regarding the board

---

[20]On a copy of the receipt petitioner indicated that she purchased particular items for herself and purchased other items for an end-of-school-year party for the literacy program. On her itemized logs she included only $24.56, the amount allegedly attributable to petitioner's HOME-related expenses.

[21]On a copy of the receipt petitioner indicated that she purchased particular items for herself and purchased other items for HOME. On her itemized logs she included only $14.75, the amounts attributable to her purported HOME-related expenses.

meetings or other activities she purportedly sponsored for HOME. We are unable to find that the meal and entertainment expenditures were directly connected with and solely attributable to the rendition of services to HOME. See Van Dusen v. Commissioner, 136 T.C. at 525. Accordingly, petitioner is not entitled to a charitable contribution deduction for meal and entertainment expenses she paid during 2006.

f.      Post Office Box Rental

In her itemized logs petitioner indicated that she paid $36 on behalf of HOME to rent a post office box. Petitioner introduced a copy of a receipt showing that in February 2006 HOME paid $36 to rent a post office box. However, petitioner failed to introduce any canceled checks or credit card statements to show that she personally paid the $36 rental fee. Accordingly, petitioner is not entitled to a charitable contribution deduction of $36 for her purported payment of the post office box rental fee.

g.      Conference Fee

In her itemized logs petitioner indicated that she paid $20 to attend a conference on behalf of HOME. Petitioner introduced a copy of a MasterCard statement showing a payment of $20 to "Christian Community DE Chicago, IL". However, petitioner did not introduce any credible evidence regarding the

relationship between the conference and HOME's charitable mission. Petitioner deducted no other expenses related to her purported attendance at the conference, and she did not include her attendance at the conference on her travel itinerary for 2006. We are unable to find that the conference fee was directly connected with and solely attributable to the rendition of services to HOME. See id. Accordingly, petitioner is not entitled to a charitable contribution deduction of $20 for her purported conference fee expenditure.

### h. Other Materials

In her itemized logs petitioner indicated that she purchased books and a cassette tape, valued at $31 and $8, respectively, in the course of contributing teaching services to HOME. To substantiate the book purchase, petitioner introduced a Wal-Mart shipment summary receipt dated February 20, 2006, showing that she purchased books including "Teaching to Change Lives" and "The Seven Laws of the Learner" for $30.61. To substantiate the cassette tape purchase, petitioner introduced an order confirmation dated March 11, 2006, showing that she purchased a "Uni Verse of Song" cassette tape for $7.93. The order confirmation shows that the tape was shipped to Jennie Bell, petitioner's mother.

Petitioner introduced no credible evidence to show that HOME acknowledged the contributions or used the items. Absent such evidence, we are unable to find that

the book and the cassette tape were directly connected with and solely attributable to the rendition of services to HOME. See Van Dusen v. Commissioner, 136 T.C. at 525. Accordingly, we find that petitioner is not entitled to a charitable contribution deduction of $39 for her purchases of books and a cassette tape.

C.      Conclusion

We sustain respondent's determination with respect to petitioner's noncash charitable contribution deduction for 2006.

III.    Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) authorizes the Commissioner to impose a penalty on an underpayment of tax that is attributable to negligence or disregard of rules or regulations or any substantial understatement of income tax. Only one section 6662(a) accuracy-related penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one of the types of conduct listed in section 6662(b). New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010); see also sec. 1.6662-2(c), Income Tax Regs.

The Commissioner has the initial burden of producing evidence to support the applicability of a section 6662(a) penalty. Sec. 7491(c). To meet this burden, the

Commissioner must come forward with sufficient evidence to show that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446-447. If the Commissioner satisfies this burden of production, the burden of producing evidence shifts to the taxpayer, who must demonstrate by a preponderance of the evidence that he or she is not liable for the penalty either because the penalty does not apply or because the taxpayer qualifies for relief under section 6664(c). Id.

Respondent contends that petitioner is liable for the section 6662(a) accuracy-related penalty because the underpayment of tax is due to either: (1) a substantial understatement of income tax; or (2) negligence or disregard of the rules or regulations.

We turn first to respondent's contention that the section 6662(a) penalty should be imposed because the underpayment is attributable to petitioner's substantial understatement of income tax. For a taxpayer other than a C corporation, a substantial understatement is any understatement that exceeds 10% of the tax required to be shown on the return for the year or $5,000, whichever is greater. Sec. 6662(d)(1).

Respondent has met the burden of production by showing that petitioner's understatement of income tax exceeded the greater of 10% of the amount of tax

required to be shown on the return or $5,000. Accordingly, petitioner has the burden of producing sufficient evidence to prove that respondent's penalty determination is incorrect. See Higbee v. Commissioner, 116 T.C. at 446-447.

A taxpayer may avoid the imposition of a section 6662(a) penalty if she demonstrates that she had a reasonable basis for the underpayment and that she acted in good faith with respect to the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. Whether a taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all relevant facts and circumstances, including the taxpayer's experience, knowledge, and education. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner failed to introduce any evidence to show that she acted with reasonable cause and in good faith with respect to the underpayment. Despite petitioner's expertise as a C.P.A. and an accounting professor, she failed to properly substantiate her claimed charitable contributions and mischaracterized certain expenses as building materials on her Form 8283. Consequently, we sustain respondent's determination with respect to the section 6662(a) accuracy-related penalty. Because we conclude that petitioner is liable for the accuracy-related penalty for her substantial understatement, we need not consider whether she is also liable for the section 6662 penalty for negligence.

We have considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.